ANNE B. GLEASON, Plaintiff, *v.* HILLCREST GOLF COURSE, INC., and Another, Defendants.

Municipal Court of New York, Borough of Queens, Sixth District, June 26, 1933.

*Manuel M. Voit*, for the plaintiff.

*Hellinger & Reichart [George I. Melter* of counsel], for the defendant Hillcrest Golf Course, Inc.

*Abner Goldstone*, for the defendant Knorr.

PETTE, J.  The plaintiff, a young matron, was riding in the front seat of an automobile, which was being driven by a gentleman friend, going east upon Union turnpike, Jamaica.  To the right of the car, in the direction in which it was proceeding, there is the defendant golf course.  Union turnpike runs east to west, and is a much-frequented arterial highway.  The southerly edge of the course abuts the turnpike, and is lined by a wire fence about six feet high, located about twenty-five feet south of the roadway. The first hole of the course adjoins the turnpike, and the tee of the first hole is so situated, in relation to the green, that one driving from it will drive a ball in a westerly direction, almost parallel to the highway.

The defendant Knorr had paid a portion of the fee as a club member, and was playing golf in a foursome.  He teed off and the ball traveled westerly about 200 yards, fell short of the hole, but remained upon the fairway.  Knorr then drove the ball again. This time it went to the right over the fence, on to the roadway, and struck the windshield of the car in which plaintiff was traveling, shattering it, and causing injuries to her, for which she seeks to recover damages against both the player and the golf course, on the theories of negligence and nuisance.

The defendant Knorr disclaims negligence on a twofold theory: *First*, that if he struck the ball intending and believing that it would travel along the proper path, and was in fact wrong in so believing, he is not liable for a mere error of judgment; and *second*, that the ball was caught in a tail or cross wind, or some other atmospheric condition which he could not foresee and which renders the occurrence an " act of God."  This last proposition, however, does not seem to be seriously urged.  Knorr submits that he did everything that a reasonably prudent man would have done under the circumstances; that he exercised due care in playing the ball; that he looked around, shouted " fore " and then struck the ball, intending it to travel in the proper direction; and that the fact that the ball veered to the right and struck the car could not have been reasonably anticipated.

The defendant club maintains that no negligence can be imputed to it for the reason that there is nothing in the evidence tending to show any breach of duty on its part; that there is no proof that any

balls had been previously hit over the fence or that the club had any notice of any such previous occurrence; that it could not be required to anticipate danger from the source in question; and that, therefore, it cannot be guilty of negligence in failing to guard against such happening.

This action was tried without a jury. It is not disputed that the accident occurred in substantially the manner described above. I am satisfied from the evidence that the ball was " sliced " by Knorr, that is, he hit it with a cut across it, so that it flew with a curve to the right. It is a matter of common knowledge that such a thing will happen to the most experienced player. That he intended to drive the ball correctly is unquestioned, but his liability or freedom therefrom can only be determined in terms of law.

There is no reported case in point in this State. Scattered cases are to be found in several other jurisdictions, involving the striking of a caddy or person while standing upon the green, but the only case dealing with the striking of a person outside of the golf course, by a ball, is *Castle* v. *St. Augustine's Links* (38 Times L. Rep. 615), decided in 1922 by the King's Bench Division, England, in which the driver of a cab in proximity to the course was permitted to recover.

With commendable diligence, counsel for the parties have submitted instructive briefs which have considerably assisted me in deciding the issues which present mainly questions of law.

The ancient game of golf had its origin in Scotland. It was formerly indulged in by only kings and the nobility. It furnishes a healthy means of exercise and relaxation, and is a sport of the first order. In more modern times, the game spread to England, and its popularity has so increased that the game is now extensively in vogue in this and other countries, among all classes of people.

A golf ball in itself is an innocent, lawful article, and so is the club which drives it. The game itself, being fundamentally honorable and sportsmanlike, suggests nothing imminently unlawful or hazardous about it.

But, when driven, though in full compliance with the rules of the game, the ball attains great speed, and may thus become a dangerous and destructive object and may strike with great violence and force, not unlike a projectile which is propelled from a weapon by whatever power it be actuated, or a stone thrown by a catapult or by the hand. In the recent case of *Simpson* v. *Fiero* (237 App. Div. 62) Mr. Justice HAGARTY, himself an accomplished player, in holding a golf player liable for the injury of a caddy by a ball, writing for a unanimous court, says: " It must be conceded that, although golf may not be deemed a hazardous game, a driven golf ball is a very dangerous missile, and that its flight and direction cannot

always be controlled by the player. That uncertainty is a part of the game. The ball when struck is liable to go on down the fairway, or fly off to the right or left at almost any angle."

The element of danger, therefore, though not intrinsic in the game itself, is nevertheless present, according to a given set of circumstances. The situation is not changed by the fact that the act of propelling the ball is in itself not wrongful and is for a lawful purpose, that is, to play the game.

The presence of the risk imports liability. As was said by Chief Judge CARDOZO in *Palsgraf* v. *Long Island R. R. Co.* (248 N. Y. 339, at p. 344): " The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension. [Citing authorities.] This does not mean, of course, that one who launches a destructive force is always relieved of liability, if the force, though known to be destructive, pursues an unexpected path. ' It was not necessary that the defendant should have had notice of the particular method in which an accident was to occur, if the possibility of an accident was clear to the ordinarily prudent eye.' " (Citing authorities.)

If there be a possibility of danger, and if the doing of a lawful act may naturally and probably result in harm, though unintended, in relation to plaintiff, there is an actionable wrong. (*Palsgraf* v. *L. I. R. R. Co., supra.*) The plaintiff here had a right of bodily security, and she was entitled to be protected against being struck by the ball, and, if that right has been violated, she may recover, although, as just stated, the interference with her right did not result from the knowing and willful conduct of defendants, so long as the striking of the ball and the causing of harm to her was within the range of natural probability.

Like baseball, the golf game is not a nuisance *per se*. Both games involve the same element, *i. e.*, striking the ball with an instrument with force so as to send it spinning into the air. If, however, the ball playing is attended with a reasonable degree of danger, as to make it likely that it would " work hurt " upon a traveler in the street, a question of fact is presented, and if it be decided adversely to the parties who are responsible for, or who participated in, or who authorized the setting of the ball in motion, liability will attach on the theory that the playing was a nuisance. (*Young* v. *N. Y., N. H. & H. R. R. Co.*, 136 App. Div. 730; *Harrington* v. *Bordon City Mfg. Co.*, 240 Mass. 170; *Lane* v. *City of Buffalo*, 232 App. Div. 334.) In the first two cases the plaintiff was struck by a ball batted upon premises adjoining the highway, while plaintiff was upon it; and in the third case plaintiff was upon private premises abutting the playground. In all of said cases the doctrine was applied.

This plaintiff had a right to be traveling in the automobile upon the highway. The ball hit the windshield suddenly. She could not be expected to watch out for deflected golf balls in the path of the car, and even if she were, there is nothing to indicate that she could have reasonably done anything to avert the accident. For aught that appears, she did not know that the golf course was there, or that a golf game was in progress at the time. The roadway itself was safe, the car was being carefully driven, and the conditions were such that no one on the highway, certainly not a person sitting in a passing car, could be reasonably required to anticipate that a ball might fly against the car any moment. Plaintiff was in substance and effect in the same position as any other traveler or pedestrian who, without warning, is struck by an object falling from a structure. In *Tinker* v. *N. Y., O. & W. Ry. Co.* (157 N. Y. 312, 318) it is said: " The primary purpose of highways is use by the public for travel and transportation, and the general rule is that anyone who interferes with such use commits a nuisance."

The rights of the public to a free and unmolested use of the highway are paramount. (*Welsh* v. *Wilson*, 101 N. Y. 254; *Callanan* v. *Gilman*, 107 id. 360; *Flynn* v. *Taylor*, 127 id. 596.)

The fact that the act complained of as wrongful was done upon private soil does not affect the liability. " Any act of an individual, though performed on his own soil, if it detracts from the safety of travelers is a nuisance." (*Klepper* v. *Seymour House Corp.*, 246 N. Y. 85, 91.) The act may be inherently lawful and for a lawful purpose, but it may at the same time be wrongful as to another.

In *Campbell* v. *Seaman* (63 N. Y. 568, 576) it is said: " It is a general rule that every person may exercise exclusive dominion over his own property, and subject it to such uses as will best subserve his private interests. Generally, no other person can say how he shall use or what he shall do with his property. But this general right of property has its exceptions and qualifications. *Sic utere tuo ut alienum non lædas* is an old maxim which has a broad application. It does not mean that one must never use his own so as to do any injury to his neighbor or his property. Such a rule could not be enforced in civilized society. * * * But every person is bound to make a reasonable use of his property so as to occasion no unnecessary damage or annoyance to his neighbor. If he make an unreasonable, unwarrantable or unlawful use of it, so as to produce material annoyance, inconvenience, discomfort or hurt to his neighbor, he will be guilty of a nuisance to his neighbor. And the law will hold him responsible for the consequent damage. As to what is a reasonable use of one's own property cannot be defined by any certain general rules, but must depend upon the circumstances of each case. A use of property in one locality and under

some circumstances may be lawful and reasonable, which, under other circumstances, would be unlawful, unreasonable and a nuisance."

Thus, in *De Agramonte* v. *City of Mt. Vernon* (123 App. Div. 717), a recovery was permitted where plaintiff, who was upon the street, was struck by a portion of a bomb discharged during a display of fireworks in a public park. This was on the theory that it was a question of fact whether the city was not negligent in allowing the display so close to the street that there was reasonable probability of injury to a person upon it. In *Sullivan* v. *Dunham* (161 N. Y. 290) the deceased, while traveling upon the highway, was struck by a section of a tree which had been hurled for about 400 feet from a tree which was being blasted away upon defendant's land, adjoining the roadway. The case was submitted to the jury upon the theory that it was not essential for the plaintiff to establish negligence in order to make out a cause of action. In sustaining a verdict for the plaintiff, the court (at p. 292) said: " The main question presented by this appeal is whether one who, for a lawful purpose and without negligence or want of skill, explodes a blast upon his own land and thereby causes a piece of wood to fall upon a person lawfully traveling in a public highway, is liable for the injury thus inflicted? * * *

" ' He will not be permitted to accomplish a legal object in an unlawful manner.' (*Hay* v. *Cohoes Co.*, 2 N. Y. 159.)

" This case was followed immediately by *Tremain* v. *Cohoes Co.* (2 N. Y. 163), a similar action against the same defendant, which offered to show upon the trial ' that the work was done in the best and most careful manner.' It was held that the evidence was properly excluded because the manner in which the defendant performed its work was of no consequence, as what it did to the plaintiff's injury was the sole question. * * * The accident in question was a misfortune to the defendants, but it was a greater misfortune to the young woman who was killed. The safety of travelers upon the public highway is more important to the state than the improvement of one piece of property, by a special method, is to its owner. As was said by the Supreme Court of Indiana, in following the *Hay* case: ' The public travel must not be endangered to accommodate the private rights of individuals.' (*Wright* v. *Compton*, 53 Ind. 337.)

" We think the courts below were right in holding the defendants liable as trespassers, regardless of the care they may have used in doing the work. Their action was a direct invasion of the rights of the person injured, who was lawfully in a public highway, which was a safe place until they made it otherwise by throwing into it the section of a tree."

In *St. Peter* v. *Denison* (58 N. Y. 416) the plaintiff was upon premises adjoining a canal, the bed of which was being blasted, and a stone so thrown struck him. In holding that the defendant contractor could not protect himself from liability upon the theory that his act of blasting out the rock was necessary and lawful, and hence that the effects of it upon the adjacent premises were an unavoidable result of a necessary act, and this, because the defendant had no right to invade the plaintiff's premises by casting stone thereon, it making no difference whether or not " he made his invasion without negligence," the court said: " The testimony warranted the finding of the referee, that the plaintiff had no knowledge or notice that the blast was about to be or had been set off, until he was struck by the piece of frozen earth and stone cast up by it. And the testimony and findings sustain the conclusion of law, that the plaintiff was not bound to exercise any care or vigilance to escape from missiles thrown by the blast; that the defendant was bound either to adopt such precautions as would prevent such missiles from reaching the place where the plaintiff then was, or to give him personal and timely notice of the setting off of such blast, to enable him to escape. The plaintiff was not bound to assume that the defendant was about to do a wrong, and so be on the watch to avoid it. The plaintiff was of lawful right where he was, and had the right to assume, until personal notice or knowledge of the contrary, that others would not unlawfully intrude upon him."

With special reference to whether the club is liable, it may be said that accidents like the one at bar are very rare indeed. This fact alone indicates the care exercised by those involved in the game. A few golf ball cases there are, but they all deal with an accident to a caddy or a person upon the golf premises at the time. Such were the cases of *Toohey* v. *Webster* ([N. J.] 117 Atl. 838); *Beeskeep* v. *Hoffman* ([Mo.] 287 S. W. 542), and *Cleghorn* v. *Oldham* (43 Times L. Rep. 465). By analogy, the underlying principle of liability in each of them applies here, *i. e.*, that the person playing the ball had knowledge that his ball might deviate from the intended course, and hence should abstain from doing what a reasonable person would not do; and that his failure to do so would render him liable in an action for negligence. To the same effect is the case of *Simpson* v. *Fiero* (*supra*) which was carefully considered by our own Appellate Division.

However, the case of *Castle* v. *St. Augustine's Links* (*supra*), which arose in England in 1922, is directly in point, and it was there held that the driver of the taxi could recover from the player on the theory that he was negligent in striking the ball while there was someone upon the adjoining roadway who might be injured

by a misdirected ball, and that he could also recover from the golf club on the theory that the particular portion of the grounds was a public nuisance under the conditions and in the place where it was situated. It was said that the club was under a duty to obviate the danger to persons upon the highway and that this could be done in several ways, as by having a lesser number of holes, or omitting the objectionable hole, or playing it in a different way. Those features and the theories upon which liability was predicated appeal to me as justifiable both upon reason and authority, and applicable to the facts at bar.

True, in that case there was evidence that played golf balls fell frequently upon the roadway, which imports actual or constructive notice to the club authorities and a duty to abate the nuisance, while here no such evidence is present. But no valid difference in principle can be assigned. There, the gist of the liability of the club is nuisance. It could be placed upon that ground alone in the case at bar, except for the fact that the basis of liability is the same, whether the form of action be for nuisance or negligence. (*Junkermann* v. *Tilyou Realty Co.*, 213 N. Y. 404, 408.) Liability does not arise unless the dangerous condition is known, or with the exercise of due care ought to have been known; and it is the nature of the use itself which creates the duty. (*Junkermann* v. *Tilyou Realty Co., supra*, 409; *Herman* v. *City of Buffalo*, 214 N. Y. 316, 320.) When those elements exist, liability may be predicated on either tort, and failure to abate dangers which reasonable care would have revealed will charge the club with liability whether the form of action be negligence or nuisance. (*Stern* v. *International Ry. Co.*, 220 N. Y. 285, 295.) Enough if it be shown that the club intended the condition, to wit, the creation and maintenance of the particular grounds, although it may have thought it was not dangerous, or been thoughtless in that regard. (*Herman* v. *City of Buffalo, supra.*)

It is not necessary to expressly charge that a defendant created or maintained a nuisance, and the facts stated need not be characterized, and in any case not involving the absence of a permit from the public authorities, if the acts are improperly characterized as one theory, recovery will nevertheless be permitted upon the other, if that be the right one. (*Uggla* v. *Brokaw*, 117 App. Div. 586, 591, 593.) If, on the theory of nuisance, the action may be sustained upon proof of a violation of an absolute duty, and if on the theory of negligence, it will be supported by a failure to use the degree of care required in the particular circumstance, which is a violation of a relative duty. (*Herman* v. *City of Buffalo, supra; Palsgraf* v. *L. I. R. R. Co., supra.*) If " the natural tendency of the act complained of is to create danger and inflict injury upon person or property, it may properly be found a nuisance as a matter of fact."

(*Melker* v. *City of New York*, 190 N. Y. 481, 488.) Any " unlawful act or omission of duty, which interferes with, obstructs, or tends to obstruct, or renders the street or the highway dangerous for passage " constitutes a public nuisance. (*McNulty* v. *Ludwig & Co.*, 153 App. Div. 206.) The doing of anything above or below the surface which renders the use of the highway hazardous, constitutes a nuisance. (*Babbage* v. *Powers*, 130 N. Y. 281, 285.) Here the turnpike was safe until it was made unsafe by the driving of the ball by a club member, from premises constructed and maintained by the defendant club, and by it permitted to be used upon payment of a fee. If the condition existed under such circumstances that the club is chargeable with presumptive knowledge thereof, if not more, or if the club created or participated in the creation of the condition, its liability is absolute upon the ground of nuisance. (*Uggla* v. *Brokaw*, *supra*, 592.) So, too, if the club was negligent in omitting to discharge its duty to prevent injury to persons lawfully passing along the turnpike which ran parallel to and abutted upon its grounds, since the risk could have been reasonably perceived or apprehended. (*Palsgraf* v. *L. I. R. R. Co.*, *supra*.)

As a general proposition, every use by one of his property which violates the rights of another in an essential degree is a nuisance, and actionable as such. A nuisance does not rest upon the degree of care used, but on the degree of danger existing even with the best of care. (*Melker* v. *City of New York*, 190 N. Y. 481.) The owners of an unsafe building adjoining a highway are charged by law with the " duty of preventing its being or becoming dangerous to persons lawfully passing along the highway." (*Vincent* v. *Cook*, 4 Hun, 318, 320; *Haack* v. *B. L. L. Assn.*, 93 App. Div. 491, 494.) Nuisance is not confined to obvious structures over a public street. If the owner of land adjoining a public highway excavates upon his land so as to render the highway unsafe for those who use it with ordinary care, he is " guilty of a public nuisance, even though the danger consisted in the risk of accidentally deviating from the road." (*Hayes* v. *Mich. Cent. R. R. Co.*, 111 U. S. 228, 236; 28 L. Ed. 410.) The " true test," said the court in that case, quoting from *Alger* v. *City of Lowell* (3 Allen [Mass.], 402), " is not whether the dangerous place is outside of the way, or whether some small slip of ground not included in the way must be traversed in reaching the danger, but whether there is such a risk of a traveller, using ordinary care in passing along the street, being thrown or falling into the dangerous place, that a railing is requisite to make the way itself safe and convenient." The doctrine of the *Alger* case has been recognized in England and generally adopted in this country. (*McNulty* v. *Ludwig & Co.*, *supra*, and cases there cited.) (See, also, *Beck* v. *Carter*, 68 N. Y. 283.)

Applying the principles enunciated by the above authorities, no reasonable distinction can be apprehended between the case of a traveler upon a public street being struck by a falling building, or falling into an excavation adjoining the roadway upon private property, or being injured by a missile set in motion from private adjacent premises. And if the owner of land contiguous to the highway is liable to a traveler who falls into an excavation on the land, upon the ground that the owner has not provided a means whereby harm might be reasonably averted to one having no cause to expect danger, then by analogous reasoning, the converse situation must also determine liability — that the owner of such premises who creates a condition upon his land, or who maintains such a condition in a manner imputing presumptive knowledge thereof, whereby an object from the land injures a lawful traveler upon the roadway, is in duty bound to take appropriate means to ward off the danger.

Whether this may be done by any method, or by a given means, is foreign to the issue. It is regrettable that this accident has happened, and that the defendants must be held liable in terms of law. Even if such an accident had never happened before, that fact would not be enough to avert liability. Only if such an accident were unlikely in the highest degree, in the minds of reasonable men, would there be basis for exoneration. (*Cleveland* v. *New Jersey Steamboat Co.*, 125 N. Y. 299, 306.) In the development of civilization and social relations, the law has been moulded to meet ever-changing conditions, and has been adapted to them without revolutionary effect, but on the contrary, with beneficial results to society at large. Witness the application and expansion of established rules of law to hitherto virgin domains, such as radio and aviation. So must it be with accidents and a variety of other circumstances which are bound to arise in their own appointed time. As was said in *Reid* v. *New York & New Jersey Tel. Co.* (151 App. Div. [2d Dept.] 96, 98), in which a boy was struck on the head by an abandoned insulator containing a projecting screw which caused severe injuries: " The occurrence of the accident in question was of such an extraordinary character that perhaps the defendant might not be chargeable with the duty to anticipate just such a completed happening as this, but the precise character of the accident is not a matter of controlling importance, for so many strange things happen in life that if we were to be exonerated from liability for our acts because of the novelty of the result, the measure of liability would be very largely restricted. What was strange was not that the insulator should fall, but that it should fall in such a manner as to strike with the screw."

So here. The rare thing was that the ball, although played by an experienced sportsman, should veer off, go over a six-foot fence and strike the car on the turnpike. That, and the proximity of the course and its particular hole to the highway, are the two proximate, concurring causes of the accident, and each is an efficient cause. *Res ipsa loquitur*. The player's liability rests in negligence for failure to use the degree of care required in the particular circumstance, he being accountable for the natural and probable consequences of his act in propelling the ball; and the club is answerable for creating and permitting the condition to exist, as well as for failure to use reasonable care to prevent injury to a person lawfully upon the highway, such as this plaintiff. The accident could not have happened without the concurrence and co-operation of both causes. Under such circumstances, both are jointly and severally liable, even if the liability of each is grounded upon an independent theory (*Sweet* v. *Perkins*, 196 N. Y. 482), and plaintiff is not required to elect whether to proceed on the theory of nuisance or negligence as against each, a recovery on one or both theories being permissible. (*Sweet* v. *Perkins, supra; Ackerman* v. *True,* 175 N. Y. 353.) It is not likely that the conclusion I have reached will work undue hardship upon any golf club, since the risk may be readily insured against for a premium which in the nature of things, will be quite small.

It follows that judgment should be granted in favor of plaintiff against both defendants, jointly and severally. The sum of $750 is deemed reasonable upon the evidence.