Burke, J.
Plaintiff’s home is situate on land abutting the thirteenth hole of the defendant country club. Between plaintiff’s patio and the thirteenth fairway are approximately 20 to 30 feet of rough, and located in that golfer’s no-man’s land is a natural barrier of 45- to 60-foot-high trees. Although plaintiff’s real property line runs parallel to the thirteenth fairway, the direct and proper line of flight from the tee to the green was at a substantial angle to the right of the property line and the rough. It was thus, as any golfer would know, far to the right of the plaintiff’s property line and patio, and it was not a “ dog leg ”.
On June 30, 1963 defendant Lacopo, a trespasser on the golf course, struck a ball from the thirteenth tee. At that time the rough was dense and the trees were in full foliage. The shot, a high, bad one, “hooked” and crossed over into the area of plaintiff’s patio and there allegedly hit the plaintiff. Lacopo did not see plaintiff and did not shout the traditional golfer’s warning: “Fore! ”
This action was commenced against the golf club on theories of nuisance and negligence in design and against the player for failure to give a warning. We have examined the facts to determine whether a recovery may be based on any theory (Van Gaasbeck v. Webatuck Cent. School Dist. No. 1, 21 N Y 2d 239, 245) and hold that plaintiff failed to prove a case against either defendant.
*315 THE COUNTRY CLUB
Although there is a significant similarity and interplay between negligence and nuisance, these causes of action should be treated separately so as to avoid confusion of issues.
In his examination before trial, defendant, admittedly a trespasser, stated that he had been ejected more than once, and plaintiff testified that other boys whom he saw were chased off the golf course. Thus, sufficient control over those who were permitted to play was exercised by the country club (Ramsden v. Shaker Ridge Country Club, 23 A D 2d 857, affd. 18 NY 2d 886).
Ramsden is instructive, for, in that case, the country club gave permission to the youthful defendant player to use the course. A golf ball propelled by the young golfer caused injury to the plaintiff. The Appellate Division, dismissing the complaint, indicated that ‘ ‘ There [was] no evidence that the club inadequately supervised its golf course or permitted immature and dangerous persons to play golf thereon” (Ramsden v. Shaker Ridge Country Club, 23 A D 2d 857, supra). This court, holding that no liability was demonstrated against the club, affirmed.
Warren and other authorities state that the general principle is that the property owner is liable only for risks inherent in the performance of an actor permitted to use the land and not for “ collateral ” or “ casual ” negligence on the part of that actor. If it is an abnormal departure from ordinary action and unusual misconduct which caused the alleged harm, this is regarded as “ collateral ”.
The design of the course was not such as to create a cause of action in nuisance or in negligence. "To constitute a nuisance, the use must be such as to produce a tangible and appreciable injury to neighboring property, or such as to render its enjoyment especially uncomfortable or inconvenient.” (Campbell v. Seaman, 63 N. Y. 568, 577). But not every intrusion will constitute a nuisance. "Persons living in organized communities must suffer some damage, annoyance and inconvenience from each other. * * * If one lives in the city he must expect to suffer the dirt, smoke, noisome odors and confusion incident to city life ” (Campbell v. Seaman, 63 N. Y. 568, 577, supra). So, too, one who deliberately decides to reside in the suburbs on *316 very desirable lots adjoining golf clubs and thus receive the social benefits and other not inconsiderable advantages of country club surroundings must accept the occasional, concomitant annoyances (Patton v. Westwood Country Club Co., 18 Ohio App. 2d 137 [1969]).
Nuisance imports a continuous invasion of rights, and the occasional — “ once or twice a week ” — errant golf ball that was found on plaintiff’s property does not constitute sufficient impairment of plaintiff’s rights (see Bohan v. Port Jervis Gas Light Co., 122 N. Y. 18, 25-26). There were only, according to plaintiff and his wife, a few golf balls, which were found in the bushes and fence area of plaintiff’s backyard. These minimal trespasses would not warrant the granting of an injunction and cannot sustain a recovery for plaintiff’s injuries.
In addition, one who chooses to reside on property abutting a golf course is not entitled to the same protection as the traveler on the public highway. In Patton v. Westwood Country Club Co. (18 Ohio App. 2d 137, supra), the Ohio Court of Appeals held that an owner, who knew that property on which she built her home abutted a play area of an existing golf course, where, as here, the design and construction of the course and location of the tees, fairways and greens did not create an unreasonable risk of harm, was not entitled to an injunction restraining the country club from operating in such a manner as to permit members’ golf balls to land on the home owner’s property. Far different from the facts herein, golf balls had broken plaintiff’s windows, struck one daughter and just missed another. Nevertheless, the court indicated there was in a sense an acceptance of risk and indifference to consequences.
Three reasons impel the conclusion that no liability may be imposed within the concepts of negligence: lack of notice; assumption of risk; and lack of foreseeability.
Plaintiff’s wife testified that she called out to a neighbor, Richard Swiggert, and complained that golf balls came on the property. No effort was made to establish the relationship of Mr. Swiggert to those in authority at the club. The record does not support a conclusion that the occurrence was frequent. In fact, plaintiff’s evidence, as shown above, is consistent with occasional incursions only. Thus, there is no basis upon which to base a finding of even constructive notice.
*317 That golf balls were found in the bushes and the fence area on plaintiff’s property does not tend to establish any risk. These invasions are the annoyances which must be accepted by one who seeks to reside in the serenity and semi-isolation of such a pastoral setting. Thus, even'if notice of these intrusions may be gleaned from the record, no preventive response was required. Remedial steps would be called for only if defendant had notice of a danger. Golf balls found in the areas adjacent to the rough—where, according to plaintiff’s evidence, they were discovered—would not have come over the trees. It was that potential occurrence which might constitute a danger, and no notice of such an incident was given. In fact, plaintiff’s wife testified that no golf ball ever struck her house. Certainly, if defendant’s shot were not extraordinary and golf balls had travelled over the trees, plaintiff’s house would have been hit.
On this record, however, the present accident is best described as unforeseeable. Plaintiff’s property and the fairway were separated by 20 to 30 feet of dense rough, through which no ball could pass with any great force, and a stand of trees 45 to 60 feet high, over which only one ball, so far as the evidence herein shows, has passed. Under these circumstances the possibility of an accident could not be clear "to the ordinarily prudent eye.”
The cases involving injuries to drivers of vehicles on highways and their passengers (Gleason v. Hillcrest Golf Course, 148 Misc. 246; Castle v. St. Augustine’s Links, [K. B., 1922] 38 Times L. Rep. 615; see also Townsley v. State of New York, 6 Misc 2d 557), relied on by plaintiff, are inapposite. The facts in Gleason (supra), for example, while exemplifying the foreseeable accident, demonstrate that the highway cases do not provide useful comparisons. In that case the southerly edge of the golf course abutted the turnpike and was lined by a wire fence about 6 feet high, located 25 feet south of the roadway. The tee was so located that the player, with permission of the club, drove a ball in a westerly direction parallel to the highway. No such patently inadequate barrier is present herein, and the course is constructed so as to require players to direct the drives away from plaintiff’s property. Therefore, we conclude, upon the proof in this case against the golf club, con *318 sidered in the light most favorable to plaintiff, the accident was the result of cause for whose existence the club was not legally responsible.
THE PLATER
Several reasons — any one of which is sufficient—support the decisions of the trial court and the Appellate Division that a prima facie case of negligence was not proven against the player: assumption of the risk; lack of foreseeability; lack of duty and failure to prove lack of due care.
Those reasons which should bar recovery against the golf club on grounds of assumption of risk and lack of foreseeability are equally applicable in considering the proof against the player. We will not repeat them.
Plaintiff, in his complaint, at the trial and on the subsequent appeals, argued that defendant failed to give a timely warning. That duty, which extends to other players (Johnston v. Blanchard, 301 N. Y. 599; Jenks v. McGranaghan, 32 A D 2d 989; Trauman v. City of New York, 208 Misc. 252) did not extend to plaintiff. The duty is imposed to prevent accidents, and the relationship between the failure to warn and plaintiff’s injuries is tenuous at best. It rests on the improbable assumption that plaintiff would have responded to it, even though no ball had ever struck his house. Living so close to a golf course, plaintiff would necessarily hear numerous warning shouts each day. As the warning would ordinarily be directed to other golfers, plaintiff could be expected to ignore them. We will not permit the submission of this case to the jury on the remote possibility that plaintiff could have recognized and acted upon any warning given by the golfer at this time.
Recognition of this fact, led one court, in Turel v. Milberg (10 Misc 2d 141), to hold that there is no duty to shout “ fore ” where the plaintiff is not in the line of play or is on a contiguous hole or fairway. Such a warning is only required in favor of those who are “ in such a position ” that danger to them is reasonably anticipated.
The admission that this was a ‘‘bad shot’’ is not sufficient to warrant submission to a jury. Plaintiff made no effort to show that defendant failed to use due care in striking the ball. Pursuant to our rules of practice (CPLR 3101, subd. [a], par. *319 [1]; 3102, subd. [a]), plaintiff took an examination before trial of defendant. Not a single question was directed at the manner in which defendant swung. Moreover, two witnesses, who observed the shot, were available to plaintiff. Thus plaintiff could have shown, for example, that defendant aimed so inaccurately as to unreasonably increase the risk of harm. This case does not require application of the doctrine of res ipsa loquitur, and we will not permit an inference of negligence to be drawn merely from the fact that this shot“ hooked ” sharply.
Golfers are notorious in the tedious preparation they give to a shot. They know that concentration is the key to the game. Yet even the best professional golfers cannot avoid an occasional ‘‘hook ” or “ slice’’ For this reason, persons on the golf course other than players are charged with assuming the risk (Trauman v. City of New York, 208 Misc. 252, supra).
One last comment on the lack of foreseeability is necessary. The player, observing the natural barrier between the thirteenth fairway and plaintiff’s property, would have less cause than the country club to assume that a golf ball could pass through or over it. The mere fact that a person may have been careless in the performance of an act does not necessarily result in actionable negligence. It is only required that the care be commensurate with the risk and danger. The plaintiff failed to show that the act of this player as to him had possibilities of danger so many and apparent as to entitle him to be protected against the doing of it. His burden of proof required that the act testified to, which he asserts constituted negligence, was not merely possible, but probable. Here, only an extraordinarily misdirected shot attaining great height could possibly drop on plaintiff’s property because of the height and density of the protective barrier. Against this kind of unlikely misfortune, the law does not confer protection. Looking back from the alleged injury to the event, we consider it highly exceptional that a player’s conduct would have brought about harm.
The courts below have unanimously found that the evidence adduced did not prove a cause of action in negligence or nuisance. Precedent supports that determination. To allow a jury to decide the issue would be to substitute surmise and speculation for reason. Lack of due care is not demonstrated *320 when the undisputed physical evidence proves that it could not have been reasonably anticipated that the harm complained of would result from the natural and probable consequences of the a'ct claimed to be negligent.
Viewed most favorably to plaintiff, the evidence and the inferences deducible therefrom do not establish a prima facie case of negligence or nuisance. Therefore, the dismissal of the complaint as against both defendants at the close of the plaintiff’s case is well founded.
Accordingly, the order of the Appellate Division should be affirmed.