Edward J. MALOUF, Harry Hollander, & C.M. Presley, Appellants,

v.

DALLAS ATHLETIC COUNTRY CLUB, Appellee.

No. 05–91–00562–CV.

Court of Appeals of Texas, Dallas.

July 21, 1992.

Rehearing Denied Sept. 8, 1992.

Edward Wayne Malouf, Dallas, for appellants.

John M. Cox, Baltasar D. Cruz, Michael R. Beene, Dallas, for appellee.

Before LAGARDE, OVARD,[1] and BURNETT, JJ.

## OPINION

LAGARDE, Justice.

Appellants own homes adjacent to the number six hole of one of appellee's (DAC) two golf courses. Appellants sued DAC for damages caused by golf balls spiking their property. After a bench trial, the trial court entered findings of fact and conclusions of law. Based thereon, the trial court rendered a take-nothing judgment in favor of DAC. Appellants argue that this was not a fair way to dispose of the case. In four points of error, appellants contend, generally, that the trial court erred in finding that (1) DAC did not trespass upon the property; and (2) DAC was not negligent in redesigning the golf course. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Edward Malouf, Harry Hollander, and C.M. Presley bought houses which abut the number six hole of the "Gold" golf course owned and managed by DAC. Each appellant complains of damage to his car and home caused by errant golf balls from unidentified golfers. Although each appellant complained to DAC, each was told it was not DAC's policy to reimburse for damage caused by unidentified third parties.

At trial, DAC general manager Robert Jones testified that the club has a procedure it follows when a golfer hits a stray shot. If notified, management will go out and inquire of groups three holes forward and three holes backward, if anyone hit the stray shot. If someone steps forward, then DAC either charges that person for the damage or puts the two parties together. DAC followed this procedure when a golf ball broke appellant Presley's window. On that day, the person who hit the ball spoke up. The Mesquite Chamber of Commerce had rented the club for that day and it reimbursed Presley on his claim.

Appellants initially filed individual lawsuits in a justice-of-the-peace court. The justice of the peace entered judgments in favor of appellants. DAC appealed to the Dallas County Court at Law Number Two. In that court, the cases were consolidated for trial. After a trial de novo, the trial court entered a take-nothing judgment against appellants.

## LEGAL ANALYSIS

### Standards of Review

Appellants raise both legal and factual sufficiency points. A legal-suffi-

1. Although Justice Ovard heard the oral arguments, he is not participating in this decision.

ciency or conclusive-evidence point is a question of law. *City of Dallas v. Moreau,* 718 S.W.2d 776, 778 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). Appellants had the burden of proof at trial to show that DAC trespassed and was negligent in its design of the course. Thus, appellants have the burden of demonstrating on appeal that the evidence conclusively established all vital facts in support of those issues. *See Ritchey v. Crawford,* 734 S.W.2d 85, 86 (Houston [1st Dist.] 1987, no writ). The initial review of a matter-of-law point is the same as that required for a no-evidence point. *A.B.F. Freight Sys. v. Austrian Import,* 798 S.W.2d 606, 612 (Tex.App.—Dallas 1990, writ denied). However, in addition to finding no probative evidence to support the trial court's finding, this Court must also find that the contrary proposition to the finding is established as a matter of law. *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982); *A.B.F. Freight Sys.,* 798 S.W.2d at 612.

In reviewing a factual-sufficiency or great-weight-and-preponderance point of error, this Court must consider and weigh all of the evidence relevant to the fact being challenged to determine whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Harco Nat'l Ins. Co. v. Villanueva,* 765 S.W.2d 809, 810 (Tex. App.—Dallas 1988, writ denied); *Ellsworth v. Bishop Jewelry & Loan Co.,* 742 S.W.2d 533, 535 (Tex.App.—Dallas 1987, writ denied). However, this Court is not a fact finder, and we do not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if there is conflicting evidence that would support a different conclusion. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Harco Nat'l Ins. Co.,* 765 S.W.2d at 810. When both legal and factual insufficiency points are raised, we are to rule upon the legal-insufficiency point first. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981); *Stiles v. Royal Ins. Co. of Am.,* 798 S.W.2d 591, 593 (Tex.App.—Dallas 1990, writ denied).

### Trespass

In points of error one and three, appellants argue that they established the elements of trespass and that, because DAC filed a general denial, there was no affirmative defense. The gist of trespass to personalty is an injury to, or interference with, possession, unlawfully, with or without the exercise of physical force. *Mountain States Tel. & Tel. Co. v. Vowell Constr. Co.,* 341 S.W.2d 148, 150 (Tex. 1960). Destruction of, or injury to, personal property, regardless of negligence, may be a trespass. *Id.* A trespass is usually regarded as an intentional tort in the sense that it involves an intent to commit an act which violates a property right, or would be practically certain to have that effect, although the actor may not know that the act he intends to commit is such a violation. *General Tel. Co. v. BI–Co Pavers, Inc.,* 514 S.W.2d 168, 170 (Tex.Civ.App.—Dallas 1974, no writ). Unless the intended act *would* violate a property right, the actor's liability for unintended consequences ordinarily depends upon proof of negligence. *Id.* (emphasis added).[2]

Appellants contend that DAC is liable for trespass. The trial court made the following findings of fact:

1. C.M. Presley suffered damage to his ... Ford Mustang ... and his fiberglass awning from a golfball(s).
2. Harry Hollander suffered damage to his ... Porsche ... and his window from a golfball(s).
3. Edward J. Malouf suffered damage to his ... Cutlass stationwagon from a golfball(s).
4. Dallas Athletic Club Country Club extensively revised and redesigned the layout of fairway No. 6 on the Gold course after 1987 to make it less possible for golfballs to move right off of the tee of fairway No. 6.

---

**2.** Although appellants asserted a negligence cause of action, it was only for negligent design and construction of the course and for failure to properly train and monitor the individual golfers—not for negligence in the hitting of the golf balls.

Additionally, the trial court made the following conclusions of law:

1. Dallas Athletic Club Country Club was not negligent in the original design of fairway No. 6 on its Gold course.

2. Dallas Athletic Club Country Club was not negligent in the redesign, after 1987, of fairway No. 6 of the Gold course.

3, 4, 5. Dallas Athletic Club Country Club did not trespass, severally or jointly, onto the property, real or personal, of C.M. Presley, Harry Hollander, or Edward J. Malouf.

The evidence supports the trial court's findings and conclusions that appellants suffered destruction of, or injury to, personal property. *See Mountain States Tel. & Tel. Co.,* 341 S.W.2d at 150. Each appellant testified concerning his individual damages and supplied a repair bill documenting the cost of the damages. However, the record reflects neither legal nor factual evidence that either DAC or the individual golfers intended to commit an act which violated a property right. *Id.* During a game of golf, on the Gold course, the individual golfers intend to hit golf balls toward hole number six. This does not violate a property right. The fact that the ball may "slice" or "hook" onto appellants' properties is an unintended consequence.[3] Appellants had the burden of proof at trial and on appeal of showing that the evidence conclusively established the elements of trespass. Because appellants failed to demonstrate that DAC or the individual golfers intentionally caused the golf balls to damage appellants' personal property, we cannot say that the trial court's conclusion of law that the DAC did not trespass is erroneous.

Appellants maintain, however, that liability for trespass is not dependent upon personal participation and that one who aids, assists, advises, or gives encouragement to the actual trespasser, or concert and coop-

eration in the commission of a trespass, or subsequent ratification or adoption by one of an act of another for his benefit or in his interest is equally liable with him who does the act complained of. *Parker v. Kangerga,* 482 S.W.2d 43, 47 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e.). Specifically, appellants assert that DAC is liable because it provides the course, physical plant, and services necessary to enable the golfers to play, and it receives an economic benefit from green fees. Because we have held, however, that the golfers did not trespass, DAC cannot be jointly or severally liable.

Appellants argue further that other jurisdictions have held country clubs liable for damages to adjacent homeowners caused by golfers. However, appellants concede that the cases they cite were not brought under a theory of trespass. In *Nussbaum v. Lacopo,* 27 N.Y.2d 311, 317 N.Y.S.2d 347, 265 N.E.2d 762 (1970), a stray golf ball caused personal injury to a plaintiff homeowner. The plaintiff sued the country club on theories of nuisance and negligence in design. The plaintiff also sued the golfer, who was a trespasser on the golf course, for failure to give a warning. *Id.,* 317 N.Y.S.2d at 349, 265 N.E.2d at 764. The court held for the defendants and found no negligence and no nuisance. *Id.; see also Sierra Screw Prod. v. Azusa Greens, Inc.,* 88 Cal.App.3d 358, 151 Cal.Rptr. 799, 801 (1979) (plaintiffs sued owners of a public golf course for an injunction under theories of nuisance, trespass, and negligence; the trial court found in favor of plaintiffs on the nuisance cause of action; the court of appeals affirmed). *Cf. Fenton v. Quaboag Country Club, Inc.,* 353 Mass. 534, 233 N.E.2d 216, 219 (1968) (golf balls landing on plaintiff's property was a trespass of such a nature that it might be terminated by injunction).

We conclude that there was probative evidence developed in this record that supports the trial court's factual finding of damage to appellants' property. Further, we conclude that appellants did not estab-

---

**3.** Where one or more elements of a ground of recovery or defense have been found by the trial court, omitted unrequested elements, where supported by the evidence, will be supplied by presumption in support of the judgment. Tex. R.Civ.P. 299; *Smith v. Smith,* 757 S.W.2d 422, 427 (Tex.App.—Dallas 1988, writ denied).

lish the elements of trespass as a matter of law. We also conclude that the trial court's conclusion of law that DAC did not trespass was not against the great weight and preponderance of the evidence. Consequently, we overrule points one and three.

### Requested Additional Findings of Fact and Conclusions of Law

In their second point of error, appellants argue that the trial court erred in refusing to enter the additional findings of fact and conclusions of law which they requested. A point of error is sufficient if it directs the attention of the appellate court to the error about which the complaint is made. TEX.R.APP.P. 74(d). The argument shall include: (1) a fair, condensed statement of the facts pertinent to such point of error, with reference to the pages in the record where the same may be found; and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. TEX.R.APP.P. 74(j). Appellants fail to cite any authority in support of their argument. We overrule point two.

### Negligence

In their fourth point, appellants complain that the trial court erred in finding that DAC was not negligent in redesigning the golf course. The trial court specifically found that:

Dallas Athletic Club Country Club extensively revised and redesigned the layout of fairway No. 6 on the Gold course after 1987 to make it less possible for golfballs to move right off of the tee of fairway No. 6.

and

Dallas Athletic Club Country Club was not negligent in the redesign, after 1987, of fairway No. 6 of the Gold course.

Appellants appear to ground their argument on the six-foot photinia hedges and a fence which DAC installed as part of the redesign. Appellants contend that DAC did not act as a reasonably prudent person in putting up the fence and hedge because the hedges handicap their view of the green. Thus, there is no way for appellants to be forewarned of an impending, speeding ball. We disagree.

A review of the trial testimony and exhibits reveals that DAC redesigned fairway number six to make the golfers aim left and away from the homes on the right by doing the following:

(1) Commissioned Jack Nicklaus to redesign the course.
(2) Held meetings about the redesign, specifically in changing hole number six to aim the golfer left.
(3) Moved the fairway approximately 20 to 30 yards left.
(4) Moved the tee box and changed its direction to point left.
(5) Moved the member's tees up and aimed left.
(6) Added mounds, berms, and a sand bunker approximately one hundred yards from the tee box. The mounds and berms run the length of the cart path which is between the fence line and the alley and the homes.
(7) Planted trees.
(8) Moved all hazards from the left side to the right side.
(9) Planted six-foot tall photinias.

DAC's general manager testified that he had played hole number six before and after the reconstruction. After the redesign, he had to aim left; otherwise, he would take a stroke penalty. Additionally, DAC entered into evidence a blueprint diagram of the Gold course that illustrated how the hole was changed.

We conclude that there was probative evidence supporting the trial court's factual finding and its conclusion of no negligence in redesign of the golf course. Moreover, we conclude that appellants did not establish the elements of negligent redesign as a matter of law. We also conclude that the trial court's factual finding was not against the great weight and preponderance of the evidence. Accordingly, we overrule point four. We affirm the trial court's judgment.