OPINION.
{¶ 1} Defendant-appellant The Ridge Club ("Club") is the owner and operator of a golf course that abuts a residence rented by plaintiff-appellee Daruice Ellery.[1] Ellery has lived in her home for about twenty years. At the time she moved into her home, Ellery was aware that the golf course abutted her property and that it was fully operational. Ellery testified that she had not noticed any appreciable change in the amount of play on the course during the time she lived in her home.
 {¶ 2} On September 1, 2003, golf balls hit and damaged two vehicles that were parked on Ellery's property. Ellery stated that she did not know who hit the golf balls. Ellery also testified that, on about four occasions in the past, the Club had repaired windows in her home that had been broken by stray golf balls. Ellery stated that she had "mentioned" to the Club "about putting some kind of thing up there" to keep the golf balls from coming onto her property.
 {¶ 3} Ellery filed a complaint against the Club, seeking to recover for the damage to her vehicles. The magistrate found in favor of Ellery. In her decision, the magistrate stated that there was "no dispute" that the "individual or individuals who hit the golf ball would be liable for the damage." The magistrate's decision stated, "The question in this case is whether the negligence of a golfer can be imputed to the owner of the golf course." The magistrate found that it was "reasonable" to impute the negligence of the golfer or golfers to the Club because the Club benefited monetarily from the dues and fees the golfers paid to use the golf course; the Club knew or should have known that golf balls might leave the course and damage abutting property; and the Club could have provided safety measures to reduce the possibility that golf balls would leave the course, but had elected not to take "such measures." The magistrate then speculated that the Club might have decided not to install "such measures" because they were "cost prohibitive." We point out that no evidence was presented about any dues or fees collected by the Club or any monetary benefit to the Club. Further, no evidence was presented about what "safety measures" the Club could have taken to prevent the damage to Ellery's vehicles, or that the Club chose not to install any "safety measures" because they were "cost prohibitive."
 {¶ 4} The Club filed objections to the magistrate's decision. The trial court overruled the Club's objections and adopted the magistrate's decision, granting judgment in favor of Ellery in the amount of $990.66. The Club has appealed.
 {¶ 5} The Club's sole assignment of error alleges that the trial court erred in imputing the negligence of a golfer to the owner/operator of a golf course.
 {¶ 6} To prevail on a negligence claim, the plaintiff must prove that the defendant owed the plaintiff a duty, that the defendant breached that duty, and that the breach of the duty proximately caused the plaintiff's injury or damage. See Chambers v. St. Mary's School, 82 Ohio St.3d 563,1998-Ohio-184, 697 N.E.2d 198; Wellman v. E. Ohio Gas Co. (1953),160 Ohio St. 103, 113 N.E.2d 629, paragraph three of the syllabus.
 {¶ 7} It is generally known that the average golfer does not always hit the ball in a straight flight. See Patton v. The Westwood CountryClub Co. (1969), 18 Ohio App.2d 137, 247 N.E.2d 761. It is common knowledge that the ball does not always go where the golfer intends or hopes for it to go. See Holbrook v. Muirfield Village Golf Club (May 29, 1979), 10th Dist. No. 78AP-710. An occasional "hook" or "slice" plagues even the best professional golfers. See Nussbaum v. Lacopo (1970),27 N.Y.2d 311, 265 N.E.2d 762. The mere fact that a golf ball does not travel in its intended direction or causes some damage or injury does not constitute proof of negligence on the part of the golfer. See id.; Pattonv. The Westwood Country Club Co., supra; Holbrook v. Muirfield VillageGolf Club, supra; Ludwikoski v. Kurotsu (D.Kan. 1995), 875 F. Supp. 727;Heiden v. Cummings (2003), 337 Ill.App.3d 584, 786 N.E.2d 240, 271 Ill.Dec. 982; Schick v. Ferolito (2000), 327 N.J.Super. 530,744 A.2d 219; Hennessey v. Pyne (R.I. 1997), 694 A.2d 691; Knight v.Jewett (1992), 3 Cal.4th 296, 834 P.2d 696; Rinaldo v. McGovern (1991),78 N.Y.2d 729, 587 N.E.2d 264, 579 N.Y.S.2d 626. But a golfer does have a duty to exercise reasonable or ordinary care for the protection of persons or property within the range of danger of being struck by the ball. See id.
 {¶ 8} There is no evidence in this case concerning whether the golfer or golfers exercised ordinary or reasonable care in hitting the balls that struck Ellery's vehicles. The mere fact that damage occurred was not, in and of itself, proof of negligence. There was insufficient evidence of negligence on the part of the golfers. Even if the golfers had been negligent, the question was not whether any negligence could be "imputed" to the Club. The Club's duty to Ellery was separate from and not dependent upon any duty owed by the golfers to Ellery. Courts have analyzed the duty owed by an owner/operator of a golf course to an abutting property owner in terms of negligence and nuisance.
 {¶ 9} In Pre-Club, Inc. v. Elliott Investment Corp. (Mar. 20, 1996), 9th Dist. No. 17347, the court analyzed the duty owed by the owner of a golf course and driving range to the owner of adjoining property under a nuisance theory. Pre-Club owned and operated a golf course and driving range on land adjoining Elliott Investment's property, where Elliott maintained indoor and outdoor tennis courts. Elliott requested injunctive relief and monetary damages, alleging that Pre-Club had interfered with Elliott's use of its property in the "surprise aerial bombardment" of its tennis patrons by golf balls hit from Pre-Club's driving range. Elliott had been aware of the golf-ball problem at the time it purchased the property. The trial court granted summary judgment in favor of Pre-Club solely on the basis that Elliott had "come to the nuisance."
 {¶ 10} The Ninth Appellate District reversed the entry of summary judgment, holding that several other factors should have been considered, along with the fact that Elliott came to the nuisance, in determining whether the stray golf balls constituted a nuisance. The factors included the nature and importance of Pre-Club's business, the nature and frequency of the disturbance and the resulting injury, the character of the neighborhood, the past actions taken by the parties to reduce the disturbance or injury, and the cost and feasibility of additional preventative measures.
 {¶ 11} In Patton v. The Westwood Country Club Co. (1969),18 Ohio App.2d 137, 247 N.E.2d 761, the Eighth Appellate District noted that "golf balls driven onto adjoining premises can be considered a nuisance." Patton had built a home on a lot adjacent to the country club's fifteenth fairway. Patton filed suit to enjoin the country club from operating in such a manner that the members' golf balls landed on her property. Patton's complaint alleged that golf balls had landed on her property, broken her windows and, on one occasion, hit her daughter. The court refused to grant injunctive relief, noting that Patton had moved to the alleged nuisance, the golf-ball hazard had not increased substantially since the time Patton had built her home, and the country club had already made several changes to appease Patton.
 {¶ 12} The California Court of Appeal held in Hernandez v. Ong (Feb. 26, 2002), 4th Appellate Dist., Div. One, No. D038200, that a person who moved to a home near a golf course was sufficiently warned of the risks by common knowledge of the nature of the sport of golf. The court held that the duty of the owner/operator of a golf course to occupants of homes adjacent to the course is to design and maintain a reasonably safe golf course consistent with the risks inherent in the game of golf. See id. Where the design of a golf course and the inadequacy of fencing permit "innumerable" golf balls to enter adjoining property and cause injury to people and damage to property, the golf course owner/operator is required to take measures to abate the private nuisance. See SierraScrew Products v. Azusa Greens, Inc. (1979), 88 Cal.App.3d 358,151 Cal.Rptr. 799.
 {¶ 13} In Malouf v. Dallas Athletic Country Club (Tex.App. 1992),837 S.W.2d 674, the plaintiffs, who owned homes adjacent to the sixth hole of the country club's golf course, sued for damage to their cars and homes allegedly caused by golf balls striking their property. The Texas Court of Appeals affirmed the trial court's judgment for the owner/operator of the golf course, holding that the plaintiffs had not established a trespass on the part of the golf course or that the golf course had been negligently designed or constructed. But the Circuit Court of Chesterfield County Virginia came to the opposite conclusion and held that the operators of a driving range were liable under a theory of trespass for damage to the plaintiff's warehouse caused by stray golf balls in Thomas Somerville Co., Inc. v. World of Golf, Inc. (1992), 27 Va. Cir. 421.
 {¶ 14} The Second District Florida Court of Appeal, in Bechhold v.Mariner Properties, Inc. (Fla.App. 1991), 576 So.2d 921, reversed a summary judgment entered in favor of a golf course owner/operator in an action for private nuisance. In 1983, the Bechholds had purchased a home adjacent to the Dunes Country Club, which was owned and operated by Mariner Properties. From 1983 to 1988, approximately twelve golf balls per year had entered the Bechholds' backyard. After the country club reconfigured the golf course in 1988, approximately one thousand golf balls entered the Bechholds' yard each year. The Bechholds presented evidence of numerous dents in a screen enclosure, broken windows, and a damaged roof and solar heating system. The Bechholds were not able to park their car in the driveway. The court noted that "living on a golf course and living with golf balls necessarily go hand in hand," but the court held that there were questions about whether the Bechholds were being subjected to more than a "reasonable exposure to golf balls" and "what steps, if any, would be appropriate to remedy" the problem.
 {¶ 15} In Mish v. Elks Country Club (1983), 35 Pa.D.C.3d 435, Mish owned a home adjacent to the defendant's golf course. Mish alleged that protective netting had been erected and was visible when the home was purchased. The netting had deteriorated so that it was no longer effective in keeping golf balls off the Mish property. In holding in favor of Mish, the court applied a balancing test, weighing the seriousness of the injury against the cost of avoiding it and the importance of the conduct causing it. The court noted that when Mish purchased the property, the protective netting was in place, and that Mish had relied on the country club to keep the netting in good repair. The court further noted that golf-ball marks covered "a great portion" of the Mish home and that a golf ball had injured a child playing on the Mish property. The court opined that erecting a screen and discontinuing the use of one tee or changing the tee's location could remedy the problem.
 {¶ 16} The New York Court of Appeals found no negligence and no nuisance on the part of the owner/operator of a golf course when a stray golf ball hit by a trespasser on the golf course hit the owner of abutting property. See Nussbaum v. Lacopo, supra.
 {¶ 17} In Fenton v. Quaboag Country Club, Inc. (1968), 353 Mass. 534,233 N.E.2d 216, the Supreme Judicial Court of Massachusetts held that golf balls landing on the Fenton property constituted "a trespass of such a nature that it might be terminated by injunction." The Fenton property was surrounded by the country club property. There was evidence that an average of two hundred fifty golf balls were hit annually onto the Fenton property and that sixteen windows had been broken. After the country club erected a fence, the annual golf-ball count was reduced to eighty-one. In granting the injunction, the court held that the applicable standard was "what ordinary people * * * acting reasonably have a right to demand in the way of health and comfort under all the circumstances."
 {¶ 18} The liability of the owner/operator of a golf course is to be resolved under the rules applicable to the owners and occupiers of land, following the general principles of negligence and nuisance. Generally, the owner/operator of a golf course has a duty to use reasonable care in light of all the circumstances to protect abutting property owners from the golf course's operations. The factors to be considered in determining whether the golf course owner/operator is liable for damage or injury to an adjacent or abutting property and its owner include (1) whether the abutting property owner knew of the existence of the golf course at the time he purchased or moved to the property; (2) the number of balls invading the neighboring property; (3) the proximity of the property and people to the golf course; (4) the steps taken to alleviate the problem; and (5) the reasonableness of the steps taken in light of the risks.[2]
 {¶ 19} We hold in this case that the Club had a duty to Ellery to use reasonable care in light of all the circumstances to protect her from the Club's operations. The record shows that at the time Ellery moved into her home, she knew the Club's golf course was fully operational. Aside from testimony about the two golf balls that had damaged Ellery's vehicles, the only evidence presented about the number of golf balls hitting Ellery's property was that on about four occasions over a twenty-year period stray golf balls had broken windows in Ellery's home. There was no evidence about what steps, if any, were or could have been taken by the Club to alleviate the problem. There was no evidence about what corrective measures, if any, were reasonable in light of the risks.
 {¶ 20} The record is insufficient to establish that the Club breached its duty to Ellery to use reasonable care in light of all the circumstances to protect her from the Club's operations. Therefore, the trial court erred in entering judgment in favor of Ellery. The assignment of error is sustained.
 {¶ 21} The judgment of the trial court is reversed, and judgment is hereby entered in favor of The Ridge Club.
Judgment accordingly.
Gorman and Painter, JJ., concur.
[1] The municipal court papers refer to Ellery as "Daruice," and the Club's appellate brief refers to her as "Daurice." In her appellate brief, Ellery refers to herself as "Darnice."
[2] For a discussion of the tort liability of golfers, golf course owners/operators, and golf equipment sellers, see Kircher, Symposium: Golf and Torts: An Interesting Twosome (2001), 12 Marq.Sports L.Rev. 347.