Melvin HOFFMAN, Appellant,

v.

Elaine POLSKY, Respondent.

No. 50825.

Supreme Court of Missouri,

Division No. 1.

Feb. 8, 1965.

Keith Martin, Campbell & Clark, Kansas City, for appellant.

George L. Gordon, Joseph E. Stevens, Jr., Daniel M. Dibble, Kansas City, for respondent, Lathrop, Righter, Gordon & Parker, Kansas City, of counsel.

HIGGINS, Commissioner.

Action for $25,000 damages for personal injuries. The trial court directed a verdict for defendant at the close of plaintiff's evidence and plaintiff appealed. The amount in dispute is thus $25,000 and this court has jurisdiction. Art. V, § 3, Mo. Const. V.A.M.S.; § 477.040 RSMo 1959, V.A.M.S.

This suit arises from the game of golf, and we state the facts in some detail because the issue is whether plaintiff made a submissible case.

Plaintiff's injury occurred June 26, 1960, at Meadowbrook Country Club in Johnson County, Kansas. Defendant was playing in a foursome and each member had driven from No. 1 tee. Defendant's drive was the shortest; she thus became first up for the second shot or stroke, and it was this shot that admittedly struck plaintiff. Just prior to the tee shots of defendant's foursome, plaintiff and his companion finished playing No. 1 hole and were going to No. 10 tee to join friends there to play the last nine holes. No. 10 tee, fairway, and green were parallel to No. 1 tee, fairway, and green, the two fairways being separated by a rough or unmowed area. No. 1 hole was almost straight east from No. 1 tee, the fairway having neither curve nor "dogleg." It was explained that the fairway is the part of the

golf course between the tee where a player starts play and the green surrounding the hole which is the goal of the player. The fairway is mowed low but not so closely as the green. To each side of the fairway is an area of rough which is not kept in the manner of the fairway in that trees are often located there and grass is permitted to grow higher than in the fairway. At Meadowbrook there were a couple of full-grown trees and a water fountain in the rough to the north of No. 1 fairway. This rough would be to defendant's left as she walked in No. 1 fairway away from No. 1 tee, and plaintiff was in this rough when defendant's golf ball struck his left hand. Exhibit A in evidence showed No. 1 fairway and the rough on its north side. The fairway was quite level.

Defendant, called as a witness by plaintiff, indicated that the trees were behind or to the north of plaintiff at a time after defendant hit her ball and after plaintiff was hit. It is not shown where plaintiff was in relation to the trees at the time defendant addressed the ball prior to hitting her second shot. Defendant also testified that she saw plaintiff on No. 1 green prior to hitting her first or tee shot and assumed when he disappeared from view that he went to No. 2 tee. This would be a normal expectation, and such course would have taken plaintiff to a point south of No. 1 green (and southeast of No. 1 fairway). Defendant's tee shot carried some fifty yards and came to rest in the fairway near the rough. She walked northeasterly from the tee to her ball where it lay on the left side (to her) of the fairway and she did not see plaintiff during this walk. Prior to hitting her second shot, defendant observed her fellow players and looked toward the hole "the way the ball is supposed to go." She also looked to the north (toward No. 10 fairway). Defendant testified that she did not see plaintiff, and that no one was in danger in her intended line of flight to the green, so she gave no warning of her intention to hit her ball. Defendant, with no intention to "pull" or "fade" her shot,

struck the ball with her 3-wood club. It went perfectly straight as intended until it "hooked," i. e., it went suddenly to her left. According to defendant, the shot carried about 150 yards. While watching the ball defendant saw plaintiff in the general area of the trees in the north rough and, when her ball hooked, the foursome (including defendant) screamed "fore" (the customary warning) and "watch out."

According to plaintiff's partner, he and plaintiff were about halfway of the approximately 380 yards between No. 1 tee and green and about 25 yards in the rough north of No. 1 fairway. He also stated that defendant gave no warning before striking her ball and that she was about sixty yards west of plaintiff at the time. He acknowledged that golfers frequently do not hit a ball straight and stated that defendant hit a bad shot which she did not intend to hit directly at plaintiff.

Plaintiff, a golfer for over thirty years, stated that he and his partner had played the first nine holes beginning about ten in the morning, and were going to meet some other golfers for the back nine. They finished the front nine early and replayed No. 1, after which they started back toward No. 10 tee, walking about twenty-five to fifty feet in the rough between No. 1 and 10 fairways. He stated the view between him and the players that he saw in No. 1 fairway was clear. He admitted that if defendant had hit a good shot it would not have come anywhere near him; that defendant's shot was a bad one which hooked to hit him; that golfers do not expect to hit bad shots, and that a warning in relation to a bad shot would need to come only after the shot was determined to be a bad one and in danger of hitting someone.

Plaintiff's injury occurred in Kansas but we are not cited to, nor have we found, governing Kansas law. In this situation we apply common-law principles.

Plaintiff limits his appeal to a contention that he made a submissible case on defend-

ant's failure to warn *prior* to striking her ball. This leads to the precise issue of whether, under the evidence in this case, defendant had a duty to warn prior to striking her ball. Plaintiff relies on Page v. Unterreiner, Mo.App., 130 S.W.2d 970. The question was "whether or not there was evidence that the defendant was negligent at the time he made his second shot in not giving the plaintiff proper warning, since he knew that plaintiff was about forty-five yards ahead of him, and in somewhat the same direction that he was trying to drive." 130 S.W.2d 972 [2]. The evidence showed that plaintiff, a caddie in defendant's foursome, was in plain view forty to forty-eight yards in front of defendant, and no more than ten to twelve feet from the direct line of flight of the ball if it traveled from defendant's club directly to the flag which marked the hole. Under those circumstances, it was held that defendant was negligent in not warning before striking his ball, and the court approved an instruction which required defendant to give a warning *prior* to striking his ball if he knew or should have known plaintiff was in danger of being struck. Plaintiff also cites Robinson v. Meding, 2 Del. 578, 163 A.2d 272, 82 A.L.R. 2d 1176, where plaintiff, a greenskeeper, was watering the green at the time of the accident. Plaintiff had moved to the apron of the green and did not see defendant but he was in plain view of defendant at the time defendant hit his ball. Defendant failed to warn of his intention to hit his ball before he hit, and the failure was held to be negligent because plaintiff, being on the edge of the green to which defendant intended to shoot, was in the general direction of defendant's drive.

■ These cases do not hold that a golfer has an absolute duty to warn everyone in the area of his play before making each shot. Rather, they stand for the proposition that one about to strike a golf ball must exercise ordinary care to warn those within the range of intended flight of the ball or general direction of the drive, and the existence of such a duty to warn must be determined from the facts of each case.

■ Robinson v. Meding, supra, is readily distinguishable from the present case because the plaintiff there was standing at the edge of the green to which plaintiff intended to drive his ball, and the duty to warn under such circumstances is obvious. Page v. Unterreiner, supra, also is distinguishable from the present case. The first distinction is that Page was Unterreiner's caddie, and was in full view of defendant separated by 40 to 48 yards and but 10 to 12 feet to the left of the intended direction of defendant's drive. In contrast, Mr. Hoffman was not where he was expected to be, and he was not seen by Mrs. Polsky; he was a greater distance away and three to ten times the distance off the intended line of flight of the ball as defendant prepared to strike it. Her ball was near, but inside the left edge of No. 1 fairway, and No. 1 green, her intended goal, would be at that time to the *southeast*. The testimony shows that at this same time plaintiff was somewhere between 60 and 150 yards in front of, and 25 to 150 feet in the rough and to the left of defendant. In this position plaintiff was to the *northeast* of defendant and thus not in the general direction of defendant's drive or within her intended line of flight, which was down a clear fairway. The evidence was not clear as to whether plaintiff was in front of or behind the trees in the rough prior to defendant's shot. This circumstance would not change the distinctions made here, however, because plaintiff's evidence was that he was not in danger until after defendant hit her ball and it thereafter hooked in his direction, and it was admitted by plaintiff that then is when a player must warn, which is the procedure followed by defendant.

The distinctions made here are supported by decisions from other states. Benjamin v. Nernberg, 102 Pa.Super. 471, 157 A. 10, is directly in point. In that case, plaintiff was lining up his putt on No. 6 green and was struck by a ball driven by defendant off No. 7 tee which hooked (west to defend-

ant's left). No. 6 green was not in the line of play from No. 7 tee. It was 120 feet to the left and about 100 feet forward of that tee. When defendant drove no one was in front of him, and when the ball hooked a companion yelled "fore," but the warning was not sufficiently timely to save plaintiff. Defendant contended that he was not bound to warn under the circumstances. The trial court agreed and entered judgment, notwithstanding plaintiff's jury verdict. The Superior Court of Pennsylvania affirmed, relying on Andrew v. Stevenson, 31 Scottish Law Review 194, 198, which is also in point. There, the pursuer (plaintiff), in a foursome, was playing to the third hole and, having played his approach shot, walked to the right and watched his opponent's play. The defender (defendant), playing in a single, when eighty-four yards behind pursuer and not playing over anyone's head or driving into anyone but down a clear and open course, played, but his ball "sliced" and, diverting to the right, hit the pursuer. The Sheriff (judge) held that in those circumstances the defender was not liable, and the Pennsylvania court reached the same result in its case, Benjamin v. Nernberg, supra, saying, "the entire No. 7 fairway was clear before the defendant; plaintiff was not in the line of defendant's play; he was not where any one could reasonably believe that he was in danger of being struck by a ball driven from No. 7 tee; it was not until after the ball was driven and it appeared that defendant had made a bad shot, and when the ball was going directly towards plaintiff, that any one thought it necessary to shout a warning. There was no duty, under the facts of this case, on defendant to warn plaintiff of his intention to play. We cannot see that defendant was at fault or that he disregarded any rule or custom of the game." 157 A. 10, 11 [1]. In Houston v. Escott, D.C., Del., 85 F.Supp. 59, plaintiff and defendant were playing the first and eighteenth holes whose fairways lay parallel to each other. Plaintiff was not more than 125 yards forward of and 50 yards south of and in full view of defendant as he addressed his ball and hit it from the

eighteenth tee. The point where plaintiff was standing when hit was approximately nineteen degrees left (or to the south) of the intended flight of defendant's ball. The court granted summary judgment in favor of defendant, relying on the holding in Benjamin v. Nernberg, supra.

 Applying these authorities to the facts of the instant case, we hold that defendant had no duty to warn prior to striking her ball, and therefore the trial court properly directed a verdict for defendant.

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.