688 P.2d 215

C.W. "Charlie" COOK and Thalia Cook, husband and wife, Plaintiffs/Appellants,

v.

Jim L. JOHNSTON and Janet Johnston, husband and wife, Defendants/Appellees.

No. 2 CA–CIV 5046.

Court of Appeals of Arizona, Division 2.

June 26, 1984.

Lieberthal & Kashman, P.C. by David H. Lieberthal, Tucson, for plaintiffs/appellants.

Bury & Moeller by David C. Bury, Tucson, for defendants/appellees.

## OPINION

HATHAWAY, Judge.

This case presents us with the question of whether a golfer, with an alleged propensity to shank his golf shot, owed a duty to warn a member of his golfing foursome about this problem and whether the so-called shanker breached that duty. The trial court, finding that plaintiff had not established the existence of such a duty, entered a judgment notwithstanding the jury's verdict which had awarded $2,000 to the plaintiff. Considering the evidence in the light most favorable to the verdict, we find that reasonable minds could differ as to the inferences drawn from the facts and reverse. See *Hurvitz v. Coburn*, 117 Ariz. 300, 572 P.2d 128 (App.1977).

On September 20, 1981, Arnold Spence, Clyde Wanslee and appellant Charlie Cook were at the Oro Valley Country Club in Tucson; preparing to play golf together. Needing a fourth player to round out the group, Spence saw his long-time golfing associate, appellee Jim Johnston, and asked him to join them. Both Spence and Wanslee had played golf with appellee for many years, until appellee stopped playing in 1979. During that time, appellee was known for shanking the ball, which usually involves hitting the ball with an eight or nine iron or pitching wedge directly to the right. The shank is the result of hitting the ball while the face of the club is open, sending the ball in a straight line far to the right of the intended line of flight. It is distinct from the slice in that the slice produces a shot which sends the ball on a gradual curve to the right. Professional golfers have difficulty preventing the occasional occurrence of these two errant shots. When appellee returned to playing golf regularly in the summer of 1981, he called the "professional" at the Skyline Country Club, Jim Silvey, and asked Silvey to help him with his game by, among other things, correcting his tendency to shank the ball. Appellee had completed two of his scheduled six lessons prior to the September 20 game. Apparently the shank problem had improved during that period.

When the golf game began on September 20, appellee vaguely recalls someone making a joke of his tendency to shank. No one else recalls the incident, but Spence testified that people occasionally joked about appellee's shanks at the 17th hole, where an eight iron was frequently used and where appellee apparently hit shank shots relatively often. In any event, appellant was never warned that appellee tended to shank the ball.

The game proceeded uneventfully until the par four ninth hole. Everyone had hit their first two shots. Spence's and appellant's balls had both landed on the green. Wanslee's ball was about thirty-five yards from the green, lying under a large tree to the right of the fairway. Appellee's ball was on the fairway approximately seventy to eighty yards from the green. Since appellee's ball was farthest from the hole, he was the first to hit his third shot. Before hitting, appellee noticed that Spence was walking toward the green on the left side of the fairway and that appellant and Wanslee were under the tree but within appellee's clear view. Appellant was sitting in the golf cart, having driven it to the location of Wanslee's ball, and was about thirty yards from the direct and intended line of flight of appellee's ball. At the time appellee hit the ball, appellant was looking straight across the fairway and apparently unaware that appellee was about to hit. When appellee hit the ball with his nine iron, he saw immediately that he had shanked the shot and yelled "fore," the golfers warning that a ball is coming. Upon hearing appellee's yell, Wanslee ducked, the standard reaction under the circumstances, while appellant turned his head toward appellee and was struck in the right eye by the ball, incurring serious permanent injury. Appellant was taken to the Northwest Medical Center and later to a doctor's office. It was estimated that appellant would need cataract surgery, that the pupil in his eye was permanently dilated and that glaucoma may result from increased eye pressure. Appellant sued appellee, alleging that appellee negligently failed to warn him of his tendency to shank the ball.

To succeed on a negligence claim, the plaintiff must demonstrate that the defendant owed him a duty of care and that defendant breached that duty. *Wisener v. State*, 123 Ariz. 148, 598 P.2d 511 (1979). The duties owed by one golfer to another have been discussed in surprisingly few recent cases, most of which have been presented in Liability for Injury or Death on or near Golf Course, 82 A.L.R.2d 1183. The general rule is that a golfer has a duty to warn others that "he intends to hit the ball when (1) [o]thers are in the zone of danger, (citations omitted) and (2) [t]hey are unaware the golfer intends to hit the ball and the golfer knows or should know of their unawareness." *Wood v. Postelth-*

*waite,* 6 Wash.App. 885, 888, 496 P.2d 988, 991 (1972). Conversely, there is no duty to warn where the other player "is not in or near the intended line of flight or when the other player is aware of the imminence of the intended shot." 496 P.2d at 991. These rules are predicated on the fact that golfers know that many shots go astray. *Allen v. Pinewood Country Club, Inc.,* 292 So.2d 786 (La.App.1974). "The mere fact that a ball does not travel the intended course does not establish negligence." *Jenks v. McGranaghan,* 30 N.Y.2d 475, 477, 334 N.Y.S.2d 641, 643, 285 N.E.2d 876, 878 (1972).

Appellant argues on appeal that appellee's history of shanking the ball effectively widened the zone of danger, i.e., the area within which appellee's shot would foreseeably deviate from the intended line of flight, and given that appellant was unaware of the imminence of appellee's shot, that appellee had a duty to warn appellant of his tendency to shank and/or his intention to hit the ball. Since it is uncontradicted that appellant was not aware appellee was about to hit his ball, the question for us is whether appellant was near enough to the intended line of flight of the ball to be within the zone of danger.

Several of the golf injury cases have discussed the distance from the intended line of flight of the ball which represents the zone of danger. In *Boozer v. Arizona Country Club,* 102 Ariz. 544, 434 P.2d 630 (1967), the supreme court found insufficient evidence to determine how many degrees from the line of flight the plaintiff was located but stated that a dividing line existed between 0 and 90 degrees beyond which a finding of negligence might be precluded. It cited several cases suggesting the zone of danger might include someone standing at a point 50 degrees from the intended line of flight where it was foreseeable from the evidence that the ball would go in that direction. In *Rose v. Morris,* 97 Ga.App. 764, 104 S.E.2d 485 (1958), the court found liability where the plaintiff was hit while playing on a different hole from that of the defendant but where the plaintiff was within 17 degrees of the ball's intended flight. The Louisiana Appeals Court, in *Allen v. Pinewood Country Club, Inc.,* supra, reversed a judgment for the defendant where the intended line of flight was 30 to 40 feet to plaintiff's left.

■ In the instant case, the trial court admitted portions of Jim Silvey's deposition testimony. Silvey testified that Johnston came to him complaining of a shanking problem and wanted to schedule some golf lessons to correct the problem. At the first lesson, Silvey watched Johnston shank approximately one out of every three shots 45 to 50 degrees from the intended line of flight when using a seven, eight or nine iron. Noting that the shanks occurred frequently, Silvey observed that the path of Johnston's swing was the greatest problem to overcome. The testimony regarding the frequency of Johnston's shanks, as well as the notoriety of his problem, conflict with Johnston's testimony on those matters. The trial court was presented with a question of fact on the issue of whether Cook was within the zone of danger in this case, particularly in light of the angle of Johnston's shanks made during the golf lesson. Reasonable minds could differ on this question in light of the evidence presented and the trial court erred when it granted the judgment notwithstanding the verdict. The verdict should be reinstated.

■ We are left to address the amount of the jury award. Since the jury found that Cook was entitled to recover, it was obligated to award those damages to which Cook was legally entitled as demonstrated by the evidence. *Hernandez v. State,* 128 Ariz. 30, 623 P.2d 819 (App.1980). The evidence demonstrates that, by the time of trial, Cook had incurred $1,300 of medical expenses and would soon require cataract surgery at a cost of $3,500 to $5,000. He also needed periodic doctor's visits for the rest of his life and risked the possibility of surgery to repair a detached retina at a present cost of $5,000 to $10,000. It is clear from the evidence that the jury's award was insufficient. The trial court erred in denying Cook's Rule 59 motion for

an additur or, in the alternative, a new trial on the issue of damages. We reject Johnston's argument that, should a new trial be necessary, it must include a redetermination of both liability and damages. Rule 59(i), Arizona Rules of Civil Procedure, 16 A.R.S., clearly provides for a new trial limited to the damages issue when an additur or remittitur has been rejected.

This case is reversed and remanded to the trial court for the determination of an additur or, alternatively, for a new trial on damages only.

BIRDSALL, C.J., and HOWARD, J., concur.