Jeanne B. KNITTLE,
Plaintiff-Appellant,

v.

Skip MILLER; Green Gables Country Club; The Ladies Professional Golfing Association; and National Jewish Hospital and Research Center—National Asthma Center, Defendants-Appellees.

No. 83CA0009.

Colorado Court of Appeals,
Div. I.

June 6, 1985.

Rehearing Denied July 11, 1985.

Certiorari Granted Nov. 18, 1985.

 

Calkins, Kramer, Grimshaw & Harring, Russell P. Kramer, Richard L. Shearer, Thomas J. Overton, Denver, for plaintiff-appellant.

Greengard, Blackman & Senter, Richard D. Greengard, Peter T. Moore, Denver, for defendant-appellee Skip Miller.

Zarlengo, Mott, Zarlengo & Winbourn, Reed L. Winbourn, Larry D. Sather, Denver, for defendant-appellee Green Gables Country Club.

Hansen and Breit, P.C., Douglas E. Best, Denver, for defendants-appellees Ladies Professional Golfing Association and National Jewish Hospital and Research Center—National Asthma Center.

SMITH, Judge.

Plaintiff, Jeanne B. Knittle, brought a negligence action against defendants, Skip Miller, Green Gables Country Club (Green Gables), the Ladies Pro Golf Association (LPGA), and National Jewish Hospital and Research Center-National Asthma Center (Hospital), for injuries sustained while she was a spectator at a "Pro-Amateur Day" golf tournament. Knittle contends on appeal: (1) that the trial court erred in granting summary judgment in favor of Miller; (2) that the trial court erred in denying her instructions on causation and intervening cause; and (3) that the jury's verdict finding either Green Gables, the LPGA, or the Hospital to be negligent but not finding them to be the cause of plaintiff's injuries was inherently inconsistent and therefore should be overturned. We disagree with each of plaintiff's contentions and therefore affirm.

The facts are largely undisputed. On September 7, 1978, the LPGA and the Hospital co-sponsored a pro-amateur golf tournament which was hosted by Green Gables. Defendant Miller, a golfer for twenty-one years, was participating in the tournament as an amateur. At the time of the incident, Miller was approximately 190 yards from the tenth hole and was taking his second shot. As the golf ball progressed on its

flight, it veered to the right and headed toward some trees and the roped off spectator area provided by the tournament sponsors and Green Gables. Plaintiff was seated approximately forty-five feet to the right of the tenth green behind the trees in the designated spectator section. Miller and the other members of his foursome yelled "fore" loudly several times when they realized the golf ball was veering off its intended course. Nevertheless, the golf ball landed in the spectator area and struck plaintiff in the left eye.

Plaintiff brought suit and Miller and Green Gables moved for summary judgment. After reviewing Miller's affidavit and deposition as well as the briefs and arguments, the court concluded that the material facts were undisputed and ruled, as a matter of law, that Miller had not breached his duty to warn plaintiff since plaintiff was not in or near the intended line of flight of the golf ball and since Miller had yelled "fore" as soon as he observed the ball veer off its intended path. Therefore, Miller's motion for summary judgment of dismissal was granted.

Summary judgment was denied as to Green Gables, and plaintiff proceeded to trial against the remaining defendants. At the conclusion of the evidence, the case was submitted to the jury on special verdict forms. Although the jury found that at least one of the remaining defendants had been negligent, it also found that such negligence was not the cause of plaintiff's injuries. Based on these verdicts the court entered judgment in favor of the LPGA, the Hospital, and Green Gables.

## I.

Plaintiff first contends that the trial court erred in granting summary judgment to Miller, arguing that he had a duty to give her a "timely and adequate warning" that she was in danger of being struck by an errant golf ball and that he breached such duty. We disagree.

Whether a defendant owes a duty to a particular plaintiff is a question of law to be determined by the trial court. *See Met-* *ropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313 (Colo.1980); *Turner v. Grier,* 43 Colo.App. 395, 608 P.2d 356 (1979).

Although there is no appellate court ruling in Colorado on the issue of a golfer's duty to warn other players or spectators, the general rule followed in other jurisdictions is that a golfer has a duty to warn those persons within the foreseeable ambit of danger of his intention to strike the ball. *See Wood v. Postelthwaite,* 6 Wash.App. 885, 496 P.2d 988 (1972), *aff'd,* 82 Wash.2d 387, 510 P.2d 1109 (1973); *Schmidt v. Orton,* 190 Neb. 257, 207 N.W.2d 390 (1973); *Jenks v. McGranaghan,* 30 N.Y.2d 475, 334 N.Y.S.2d 641, 285 N.E.2d 876 (1972); *Johnston v. Blanchard,* 301 N.Y. 599, 93 N.E.2d 494 (1950). The complementary general principle is that one who is outside the zone of danger or who is aware of the impending shot is not entitled to any such warning, and that if such a person is hit by a golf ball, the driver of the ball will not be liable for failing to give any warning before he makes the shot. *Jenks v. McGranaghan, supra; Mazzuchelli v. Nissenbaum,* 355 Mass. 788, 244 N.E.2d 729 (1969); *Hoffman v. Polsky,* 386 S.W.2d 376 (Mo.1965); *Murphy v. Podgurski,* 236 So.2d 508 (La. App.), *writ refused,* 256 La. 867, 239 So.2d 363 (La.1970); *see also Houston v. Escott,* 85 F.Supp. 59 (D.Del.1949) (applying Delaware law; summary judgment is appropriate since plaintiff was not in line of defendant's play). *See generally,* Annot., *Golf Course—Liability for Injury,* 82 A.L.R.2d 1183 (1962 & 1985 Supp.).

These rules are predicated on the fact that golfers and golfing spectators know many shots go astray from the intended line of flight, and that such fact is a risk all such persons must accept. *Allen v. Pinewood Country Club, Inc.,* 292 So.2d 786 (La.App.1974). To hold a golfer negligent merely because his golf ball did not travel in the direction he intended, would be imposing a greater duty of care on the golfer

than is realistic. *Page v. Unterreiner*, 106 S.W.2d 528 (Mo.App.1937).

We adopt these rules, and, in applying them to the present case conclude that the trial court properly entered summary judgment for Miller.

■ Summary judgment is appropriate when the moving party can show through pleadings, affidavits, depositions, and admissions on file that there are no genuine issues of material facts such that the court may enter judgment, as a matter of law. C.R.C.P. 56; *Huydts v. Dixon*, 199 Colo. 260, 606 P.2d 1303 (1980). Once the moving party makes a convincing showing that there are no genuine issues of material fact, the opposing party must demonstrate by relevant and specific facts that a real controversy exists. *Ginter v. Palmer & Co.*, 196 Colo. 203, 585 P.2d 583 (1978). Thus, an adverse party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts demonstrating the existence of a genuine issue for trial. *Ginter v. Palmer & Co., supra.*

■ Here, at the summary judgment hearing, plaintiff offered no evidence disputing the fact that Miller had given a warning. Nor did she make any showing that any negligence was involved in hitting the ball in the manner in which Miller did or in giving the warning when and in the manner he did. Even if Miller had given the warning before he made the shot, there was no indication from plaintiff that she could have heard or would have heeded the warning, since she was not in or near the line of defendant's intended shot. Indeed, plaintiff was some 45 feet to the right of the tenth green and viewing those who were on the eleventh tee box. She was not in Miller's view as the spectator area was obscured by trees. Plaintiff did not dispute the facts as set forth in Miller's deposition or affidavit; thus, summary judgment was appropriate.

## II.

Plaintiff next argues that the trial court erred in denying two instructions she tendered concerning causation. Plaintiff contends that her tendered and refused instructions would have clarified the effect of a third-party's intervening acts upon the remaining defendants' liability. We disagree.

■ In view of the instructions that were given by the court, we conclude it properly refused plaintiff's instructions. Similar instructions as proffered by plaintiff have been refused when the trial court has generally instructed on the issue of proximate cause. *Maloney v. Jussel*, 125 Colo. 125, 241 P.2d 862 (1952).

When read as a whole, the instructions given adequately conveyed to the jury the substance of what plaintiff had tendered in her proposed instructions. Therefore, plaintiff's tendered instructions were properly refused.

## III.

Finally, plaintiff argues that the jury's finding by special verdict that the defendants were negligent, but were not the cause of plaintiff's injuries, was inherently inconsistent and not supported by the evidence. We disagree.

■ This argument is disposed of by the holding in *City of Aurora v. Loveless*, 639 P.2d 1061 (Colo.1981). The jury here had sufficient competent evidence to support its conclusion that any negligent act on the part of defendants, the LPGA, the Hospital, or Green Gables was not a cause of plaintiff's injury. Therefore, in light of the evidence, a holding that the jury's special verdict was inconsistent would be purely speculative on our part. The jury's findings must stand.

Judgment affirmed.

PIERCE and BABCOCK, JJ., concur.