Florence A. LUDWIKOSKI, Plaintiff,

v.

Ryoji KUROTSU, Defendant.

No. 93–2155–JWL.

United States District Court, D. Kansas.

Jan. 13, 1995.

See also, 840 F.Supp. 826.

Mark C. Owens, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, for plaintiff.

R. Douglas Gentile, Baker, Sterchi & Cowden, Kansas City, MO, Robert M. Carroll, Baker, Sterchi & Cowden, Overland Park, KS, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This action is brought by plaintiff Florence Ludwikoski, who was hit in the face and eye by a golf ball she claims was hit by the defendant. She alleges that defendant Ryoji Kurotsu was negligent in the manner in which he hit the ball, and that her injuries are a direct result of his negligence. The matter is currently before the court on defendant's motion for summary judgment (Doc. # 46). For the reasons set forth below, defendant's motion is granted.

### II. Factual Background

On October 10, 1991, defendant and his associate were in Kansas City discussing business with two executives of Butler Manufacturing Company. The four men had lunch together at the offices of Butler Manufacturing. Defendant did not consume any alcohol during lunch. After lunch, the four men went to the Mission Hills Country Club to play golf. At that time, defendant was sixty-six years old and had been playing golf for nearly thirty years. He played golf dozens of times a year, had received professional training and, at one point, had a handicap of 22.

The golf game started at approximately 1:00 p.m. The weather was nice. Defendant did not consume any alcohol during the golf game. On each of the first seventeen holes, defendant's tee shot was straight down the fairway with no hook and only an occasional fade to the right. He had a smooth, consistent swing, knew how to hold the club, and understood the game and its rules of etiquette. The foursome was taking its time, and there was no rush to finish the game.

The foursome arrived at the 18th tee at approximately 5:00 p.m. The 18th hole is basically a straight par 5 that parallels Belinder Road. A fence separates the golf course from the road, along with a row of trees. Defendant took the same amount of time and preparation before his tee shot as he did on the previous 17 holes. He did nothing different or unusual on the 18th tee. His intended line of flight for the ball was down the center of the fairway. He saw no one in his intended line of flight and neither he nor any other member of the foursome was aware that plaintiff was sitting in a car in a driveway across the street from the golf course. Neither defendant nor any other member of the foursome yelled any type of warning prior to the shot.

At approximately the same time the foursome arrived at the 18th tee, plaintiff was leaving an estate sale where she had been working all day. The estate sale was being held at a private home located on Belinder Road across the street from the golf course. The driveway of the house was approximately 100 yards north of the 18th tee. Plaintiff left the house and went to her car, which was parked on the street. She started her car and pulled into the driveway of the house where the estate sale was being held so she could turn around. As she did so, she saw a friend coming out of the front door of the house. As she was waiting to talk to her friend, the engine of her car running, defendant hit his tee shot.

Defendant's tee shot went straight for 25–30 yards and then hooked to the left. When defendant and his fellow golfers saw the ball begin to hook, they all yelled "FORE" as loudly as possible. The ball traveled over the perimeter fence, through a group of trees planted by the golf course to prevent errant shots from leaving the course, over Belinder Road, through another group of trees and into plaintiff's open car window, striking plaintiff in the eye and face. Defendant and his fellow golfers lost sight of the ball as it entered the first row of trees and did not see it again. Neither plaintiff nor the persons

**730**

she was speaking with heard any type of warning prior to plaintiff being struck in the face by the ball.

Defendant and the other members of the foursome did not hear any response to their yells of "FORE," so the remaining three golfers hit their tee shots. As they proceeded up the fairway after the tee shots, they saw a man at or near the perimeter fence motioning to them to come over to the fence. They learned at that time that the ball had hit plaintiff, who was pointed out to them. That was the first time defendant or the other golfers had seen plaintiff or her car.

### III. Summary Judgment Standards

■ A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12.

■ The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact concerning its claims. This burden may be met by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a

genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

### IV. Discussion

Plaintiff alleges that the defendant "caused a golf ball to be launched from the 18th tee in such a negligent and careless manner so as to leave the premises of the Mission Hills Country Club." She further alleges that as a result of defendant's negligence, she was struck in the face and eye with the ball, causing severe and permanent injuries. In essence, plaintiff proceeds on three separate negligence grounds, those being that: (1) defendant hit his tee shot in a negligent manner; (2) defendant failed to give a warning prior to hitting his tee shot; and (3) defendant gave an inadequate warning after hitting his tee shot.

■ In order to state a negligence claim under Kansas law,[1] plaintiff must allege the existence of a duty, a breach of that duty, an injury, and a causal connection between the duty breached and the injury suffered. *Nero v. Kansas State University*, 253 Kan. 567, 861 P.2d 768 (1993). Whether a duty exists is a question of law. *Honeycutt v. City of Wichita*, 251 Kan. 451, Syl. 8, 836 P.2d 1128 (1992).

---

1. Because jurisdiction in this case is based upon diversity of citizenship, the court must ascertain and apply Kansas law. *Lutz Farms v. Asgrow Seed Co.*, 948 F.2d 638, 641 (10th Cir.1991).

■ It is generally established that the mere fact that a person is struck by a golf ball driven by a person playing the game of golf does not constitute proof of negligence on the part of the golfer who hit the ball, and that a golfer is only required to exercise reasonable care for the safety of persons reasonably within the range of danger of being struck by the ball. *See Ludwikoski v. Kurotsu,* 840 F.Supp. 826, 827 (D.Kan.1993); *Fink v. Klein,* 186 Kan. 12, 348 P.2d 620 (1960).[2] *See generally* David M. Holliday, Annotation, *Liability to One Struck by Golf Ball,* 53 A.L.R. 4th 282, 289 (1987); *Rinaldo v. McGovern,* 78 N.Y.2d 729, 587 N.E.2d 264, 579 N.Y.S.2d 626 (1991).

■ The court finds that the plaintiff has put forward no evidence to support a finding by a reasonable jury that the defendant hit his tee shot in a negligent manner. The uncontroverted evidence is that plaintiff was an experienced golfer who plays dozens of times a year, that he has had professional training, and that he constantly practices. Further, the evidence is uncontroverted that plaintiff had consumed no alcohol prior to the time he hit his fateful tee shot, that he had a smooth consistent swing, that he knew how to properly hold the club, that his tee shots on the first seventeen holes were straight down the fairway with no hook and only an occasional fade to the right, that he took the same amount of time and preparation on the 18th tee as he did on the 17 previous tee shots, and that he did nothing different or unusual on the 18th tee.

■ Plaintiff comes forward with no evidence that controverts defendant's statement that he executed his shot on the 18th hole in the same manner as he did every other tee

shot. Her only effort along those lines is a bald assertion that "[i]t is not unusual for a golfer to attempt to hit a longer shot on a par 5 hole by intentionally putting somewhat of a hook spin on the shot by rolling the wrists on the stroke. In this case, the fact that golfers often try such adjustments coupled with the fact that the ball did hook shows that defendant did indeed do something different on the 18th hole." The court finds this argument, even if it represents an accurate statement of golfing technique, is based on a generic reference as to what other golfers may do, merely invites speculation as to whether the defendant did so and does nothing to advance plaintiff's argument that defendant did not exercise due care in hitting his tee shot on the 18th hole.[3]

■ The court also finds that under the factual circumstances of this case, defendant had no duty to give a warning prior to hitting his tee shot on the 18th hole. The general rule is that although a golfer about to hit a shot must, in the exercise of ordinary care, give an adequate and timely warning to those who are unaware of his or her intention to play and who may be endangered by the play, this duty does not extend to those persons who are not in the line of play if danger to them is not to be anticipated. *See* David M. Holliday, Annotation, *Liability to One Struck by Golf Ball,* 53 A.L.R. 4th 282, 289 (1987); *Rinaldo v. McGovern,* 78 N.Y.2d 729, 587 N.E.2d 264, 579 N.Y.S.2d 626 (Ct. App.1991); *Knittle v. Miller,* 709 P.2d 32, 34 (Colo.App.1985); *Cook v. Johnston,* 141 Ariz. 589, 688 P.2d 215 (Ariz.App.1984); *Schmidt v. Orton,* 190 Neb. 257, 207 N.W.2d 390 (1973). Although the court has been unable to find any Kansas case directly on point,[4]

---

**2.** The only Kansas case this court has found considering the negligence of a golfer who has injured a nonplayer by an errant golf shot is *Fink v. Klein,* 186 Kan. 12, 348 P.2d 620 (1960). In *Fink,* the court upheld the finding of a jury that plaintiff's contributory negligence prevented her from recovering for injuries received when hit in the legs by a golf ball. *Id.* at 19, 348 P.2d 620. Thus, the court implicitly recognized that each party in the suit had a duty to exercise reasonable care on the golf course.

**3.** The proffered evidence is unlike evidence of the defendant's own habit to intentionally hook the ball under these circumstances, which might en-

title a plaintiff to the inference that he did so on this occasion. That kind of habit evidence is entirely lacking.

**4.** In *Fink v. Klein,* 186 Kan. 12, 348 P.2d 620 (1960), the court found that the golfer was guilty of negligence because he gave no warning, by calling "fore," before hitting his shot. *Id.* at 15, 348 P.2d 620. However, it is apparent from the facts of the case that the plaintiff was standing about 100 yards in front of the golfer, in the rough on the opposite side of the fairway, and was in plain view of the golfer. Thus, it appears that the plaintiff in *Fink* was standing within the

the court believes that Kansas would follow the "foreseeable ambit of danger" rule adopted by the majority of other jurisdictions.

In this case there is no question that plaintiff was not in the "foreseeable ambit of danger" when defendant struck his drive on the 18th tee. Plaintiff was sitting in a car in a driveway across the street from the golf course, which was past a perimeter fence and a group of trees planted by the golf course to prevent struck golf balls from leaving the course. The uncontroverted facts of this case show that, as a matter of law, plaintiff was outside the foreseeable ambit of danger as defined and applied by the courts and was not entitled to a warning prior to defendant's shot. *See, e.g., Rinaldo,* 587 N.E.2d at 265; *Knittle,* 709 P.2d at 34.

Plaintiff's final negligence claim is that defendant did not give a sufficient warning after he hit his tee shot on the 18th hole and realized that it might leave the course. Defendant has presented evidence that when he and his fellow golfers in his foursome saw the ball begin to hook and head over the trees towards Belinder Street, they all yelled "FORE" as loudly as possible. In attempting to controvert this evidence, plaintiff states that "[d]efendant and his fellow golfers did not yell a sufficient warning. Plaintiff and persons standing in the yard on Belinder did not hear any warning whatsoever." Plaintiff also presents her own affidavit statement and affidavits from the two persons who were in the yard with her stating that they "have had no problems with [their] hearing and can easily hear a shout from 100 yards away."

The court finds that plaintiff has not presented sufficient evidence to create a question of material fact as to the adequacy of defendant's warning following his recognition that his ball was heading off the course. The mere fact that plaintiff and the other persons standing in the yard did not hear the warning does not directly controvert defendants' evidence that both he and his fellow golfers yelled "FORE" as loudly as possible. Further, the affidavit statements of plaintiff and the two persons in the yard that they "had no problems with [their] hearing and can easily hear a shout from 100 yards away" is insufficient to create a fact question as to whether the warning was actually given. The general averments in the affidavit statements, which merely indicate that the persons can "hear a shout from 100 yards away," are not the same as an averment that they would have heard a warning shout had one been yelled by defendant. The affidavit statements fail to take into account that the shouts in question would be coming from across a street, behind two rows of trees, and would need to be audible over an idling car engine.

The court in *Posey v. Skyline Corp.,* 702 F.2d 102 (7th Cir.1983), was faced with a situation similar to the present case. *Posey* involved a suit by a former employee for alleged wrongful discharge in violation of the Age Discrimination in Employment Act. At issue in the case was whether the defendant employer had posted required ADEA notices. As part of its motion for summary judgment, the defendant submitted two affidavits to the district court, both averring that defendant had in fact conspicuously posted the required ADEA notice of rights. In response to those affidavits, plaintiff submitted an affidavit in which he personally averred that he glanced at the posters on the bulletin board in the employees' lunch room almost every working day, that he promptly read any new posted notices, and that he never saw and does not recall ever reading a notice to employees of their rights under the ADEA as stated in the affidavits of the defendant. *Id.* at 105.

The *Posey* court upheld the district court's finding that plaintiff's affidavit was insufficient to create a question of fact concerning whether the defendant had conspicuously posted the requisite notice. The court stated that:

> The affidavits submitted by Skyline Corporation uncontrovertedly indicate that the company did indeed conspicuously post the requisite notice. Posey's affidavit merely indicates that Posey never saw the ADEA notice, which is not the same as an averment that the notice was not in fact conspicuously posted. This is no doubt a very close distinction, but it is one we must

"foreseeable ambit of danger," making the *Fink* decision consistent with the majority rule.

draw, especially in light of the strict requirements of Rule 56 of the Federal Rules of Civil Procedure. Although it is true that a court should give the party opposing a summary judgment motion the benefit of all reasonably drawn inferences, the mere possibility that a factual dispute may exist, without more, is an insufficient basis upon which to justify denial of a motion for summary judgment. Posey's affidavit perhaps at best hints that a question of fact may exist in this case. Rule 56, however, demands that Posey show *specific* facts indicating that a genuine issue does indeed exist for trial. This requirement simply has not been met. Neither the district court nor this Court has an obligation to hypothesize or speculate about the various implications of Posey's factual presentation. Unsupported by other evidence, Posey's averment that he never saw an ADEA poster at Skyline fails to go far enough to rebut Skyline's unambiguous affidavits.

*Id.* at 106 (citations omitted).

Just as Posey's averment that he had never seen an ADEA poster at Skyline failed to directly controvert Skyline's straightforward affidavits, in the present case the affidavit statements of plaintiff and the two persons in the yard, in and of themselves, do not controvert defendant's unequivocal evidence that a warning was given. Plaintiff has failed to produce evidence that she or the persons in yard would have heard a warning shout had one been given. Instead, the mere generalized assertion in the affidavit statements that the persons can "hear a shout from 100 yards away," which fails to take into account any of the conditions in effect at the time the warning was allegedly given, requires the court to speculate that defendant's warning shout would have been heard even though it came from across the street, behind two rows of

trees, and would need to be audible over an idling car engine. Such speculation is not proper in analyzing whether there is a factual dispute here.[5] While the non-moving party is entitled to all reasonable inferences from the evidence, she must first proffer facts from which drawing the inference she seeks would be reasonable. Accordingly, the court finds that the affidavit statements are insufficient to rebut defendant's uncontroverted evidence that defendant yelled a warning after hitting his drive on the 18th tee.[6]

## V. *Conclusion*

IT IS, THEREFORE, BY THE COURT ORDERED THAT defendant's motion for summary judgment (Doc. # 46) is granted.

**IT IS SO ORDERED.**

---

**5.** The court believes that this situation is far more speculative, in fact, then the one in *Posey*.

**6.** In *Rinaldo v. McGovern,* 78 N.Y.2d 729, 587 N.E.2d 264, 579 N.Y.S.2d 626 (1991), the court found that, as a matter of law, a golfer owed no duty to yell a warning to plaintiffs who were struck by his ball while driving on a nearby roadway because the possibility that a warning would have been effective to prevent the accident was simply too remote to justify submission of the case to the jury. While this court does not

agree with the *Rinaldo* opinion to the extent that it can be read to prohibit a finding of liability for a golfer who hits an individual located off the golf course premises, this court does believe that to find liability in such a situation requires a specific factual showing from which the trier of fact could infer that any warning made by the golfer would have been heard and heeded by the individual in danger of being struck. Plaintiff has failed to make such a showing here.