Filed 02/10/26

VERMONT SUPERIOR COURT
Windham Unit
7 Court Street
Newfane VT 05345
802-365-7979
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-01112

| Giovanni Vecchiarino v. Margit Ridgway, et al |
|---|

## Ruling on Defendant Seton King's Motion For Summary Judgment (Motion # 17)

In this personal injury action, Plaintiff Giovanni Vecchiarino alleges that he was injured when Defendant Seton King hit a golf ball in an indoor golf simulator room, and the golf ball ricocheted and struck Plaintiff. King now moves for summary judgment. Plaintiff opposes summary judgment, and Defendant Snow Mansions, LLC ("Snow") also filed an opposition to King's motion.

### Procedural Standard

Summary judgment is appropriate if the evidence in the record, referred to in the statements required by V.R.C.P. 56(c), shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. V.R.C.P. 56(a); *Gallipo v. City of Rutland,* 163 Vt. 83, 86 (1994). In assessing a motion for summary judgment, the Court views all facts and indulges all inferences in favor of the non-moving party. *Price v. Leland,* 149 Vt. 518, 521 (1988). The Court derives the undisputed facts from the parties' statements of fact submitted under V.R.C.P. 56(c) and any supporting documents and affidavits. *Boulton v. CLD Consulting Engineers, Inc.,* 2003 VT 72, ¶ 29, 175 Vt. 413, 427.[1]

### Facts

The following facts are undisputed unless otherwise noted. At the time of the events that precipitated this action, Plaintiff and King were students at Worcester Polytechnic Institute and members of the Alpha Tau Omega fraternity. In December 2021, the fraternity rented the "Blue House" in Vermont, a property located at 3 Margit Ridgeway Road in West Dover. The fraternity had rented the Blue House the year before.

---

[1] The Court notes that Defendant Snow's Response to King's Statement of the Material Facts does not comply with V.R.C.P. 56(c)(2). First, Defendant Snow fails to "reproduce each numbered paragraph of the moving party's statement before including the response thereto." V.R.C.P. 56(c)(2). Additionally, when Defendant Snow attempts to deny King's assertions, it fails to include "specific citations to particular parts of materials in the record that the responding party asserts demonstrate a dispute." *Id.*

The Blue House contained a golf simulator room.  King asserts that the fraternity's "risk manager," Dante Amicarella, briefed the participants on the house rules and told them to make sure they were sober enough to swim or use the sauna or have someone with them.  He allegedly told them not to use the golf simulator "stupidly."  Defendant Seton King's Statement of the Material Facts as to Which There is No Genuine Dispute to be Tried (King SUMF), ¶ 7.[2]

The students attending the trip ranged from 18 to 23 years old.  King asserts that "[a]lcohol was consumed at the Blue House on the night of the subject accident," King SUMF, ¶ 9, but the passage of Plaintiff's deposition that King cite does not support the assertion.  See Exh. B at 83:5-13 (Plaintiff admits that some of the "kids . . . were underage for purposes of drinking alcohol").

Plaintiff admits that he drank, and that it was not the first time that he had alcohol.  Some of the students, including King and Plaintiff, started drinking and playing a game called "die" around 9 or 9:15.  Plaintiff admitted to drinking four to five 12-ounce beers while playing the game, then another several beers while playing shuffleboard and another game of "die," for a total of six or seven beers by 2 a.m.

Meanwhile, King and several other students went to the golf simulator room at around 11 p.m. and began hitting balls at the screen.  King did not inspect the golf simulator before using it.  The students had prior experience playing golf.  King had played golf for about seven years and had experience with a golf simulator in Texas.  At around 2 a.m., Plaintiff joined the other students in the golf simulator room, and did not inspect the tarp.

Plaintiff hit a couple of balls, which landed near or past the tee box.  Other students continued to hit golf balls in the simulator room until Plaintiff's eye was hit by a ball.  King hit the ball that struck Plaintiff, although Plaintiff did not see the particular swing.  Plaintiff did not observe King do anything particularly dangerous with the clubs.  By King's own estimate, by the time the incident occurred, he had consumed twelve beers during a period of over five hours.

King was using a three-wood with a wooden head at the time of the incident.  He "topped" the ball, causing it to travel low, and it made a "ding" sound when it hit the screen, flying back in a straight line and hitting Plaintiff, who was in the back of the room.  In King's experience, typically the balls hitting the screen make a dead sound and fall straight down.  King and another student lifted the bottom portion of the screen and found a metal pipe behind it.

Plaintiff asserts that King admitted to having been drunk by 9 p.m. that day, and that he continued to drink after that time.  King admitted that by the time he entered the golf simulator room, he was too intoxicated to legally operate an automobile, and he

_____

[2] To the extent to which Amicarella's statements are hearsay evidence, they are not undisputed material facts.

continued to drink in the golf simulator room until the incident occurred. It is disputed whether King knew that there was a risk of topping the ball, based on his previous experience golfing and hitting balls with a three-wood, and whether drinking all night and being tired from skiing would contribute to hitting errant shots in the golf simulator room. King further admitted that his alcohol consumption contributed to his mis-striking the ball that hit Plaintiff.

Plaintiff introduces evidence from his expert, Brad Lefebvre. According to Lefebvre, the decisions to use a golf simulator room that was in ill-repair, to use equipment that was in ill repair, and to use equipment that other golfers would not have used in this situation all contributed to the ball striking Plaintiff.

Discussion

King proposes that Plaintiff's negligence claim against him must fail because the fact that King topped the ball is not sufficient to establish that he failed to exercise due care; there is no evidence that King's consumption of alcohol caused the ball to go in an unintended direction; and the actual reason for the ricochet that caused the ball to hit Plaintiff was a metal object behind the screen of the simulator. He contends that Plaintiff cannot show how King breached the standard of reasonable care under the circumstances, and cannot show that a breach of care on King's part was the proximate cause of Plaintiff's injuries.

Plaintiff counters that King, as a golfer, was responsible for the direction and trajectory of the ball, and that King, as a result of being intoxicated, made choices that made it more probable that he would "top" the ball. He also argues that negligence may be inferred because the doctrine of *res ipsa loquitur* applies.

"The four elements of a prima facie negligence claim are well established: (1) 'a legal duty owed by defendant to plaintiff,' (2) 'a breach of that duty,' (3) an 'actual injury to the plaintiff,' and (4) 'a causal link between the breach and the injury.'" *Zeno-Ethridge v. Comcast Corp.*, 2024 VT 16, ¶ 33, 219 Vt. 121 (quoting *Zukatis v. Perry*, 165 Vt. 298, 301 (1996); *Ziniti v. New Eng. Cent. R.R.*, 2019 VT 9, ¶ 15, 209 Vt. 433). In order to succeed in a negligence claim against King, Plaintiff will have to prove that King owed Plaintiff a duty, that King breached that duty, that Plaintiff sustained injury, and that the injury was caused by King's breach. There is no dispute concerning the third element—Plaintiff was injured when the golf ball struck him. Plaintiff's argument is that King was tired and drunk when he decided to use the golf simulator, and he used a club that created a risk of topping the ball. Plaintiff posits that King ignored the risks to others and hit the ball anyway. He does not claim that the angle that King hit the ball was outside of the foreseeable places on the golf simulator tarp (screen) where the ball would hit during normal use of the golf simulator, for instance, against a side wall or toward the back of the room, directly where observers were standing. He simply alleges that the ball went low, toward the bottom of the tarp, then ricocheted toward the back of the room where it struck Plaintiff. Whether the ricochet was caused by the tarp being too close to the wall, or because there was a metal object behind it in that place, or simply because shots sometimes ricochet in a golf simulator, is a question of fact.

3

Plaintiff argues that the principle of *Palsgraf* applies here.  The court in *Palsgraf* stated that

> [t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension (Seavey, Negligence, Subjective or Objective, 41 H. L. Rv. 6; *Boronkay v. Robinson & Carpenter*, 247 N. Y. 365). This does not mean, of course, that one who launches a destructive force is always relieved of liability if the force, though known to be destructive, pursues an unexpected path. "It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye" (*Munsey v. Webb*, 231 U. S. 150, 156; *Condran v. Park & Tilford*, 213 N. Y. 341, 345; *Robert v. U. S. E. F. Corp.*, 240 N. Y. 474, 477).

*Palsgraf v. Long Island R. Co.*, 162 N.E. 99 (NY 1928).  In the famous mishap litigated in *Palsgraf*, a guard attempted to help a late passenger by pushing him into a train car, causing the passenger to drop a package that happened to contain fireworks.  *Id*.  The fireworks exploded, causing some tiles at the other end of the platform to fall, injuring the plaintiff.  The high court of New York dismissed the plaintiff's claim, holding that the guard's negligence was in relation to the passenger he pushed, not to the plaintiff. See *id*. ("Negligence, like risk, is thus a term of relation. Negligence in the abstract, apart from things related, is surely not a tort, if indeed it is understandable at all.") (citation omitted).  The dissent in *Palsgraf*, however, noted that the plaintiff's injury was most definitely caused by the guard's negligence.

The reasoning in *Palsgraf* could be applied in either King or Plaintiff's favor.  The question is whether King had a duty to Plaintiff that he breached by hitting the ball in the golf simulator room under all the circumstances, including the condition of the room and equipment, and his physical and mental state while he was intoxicated and tired.[3] While the question of the metal pipe's role in the ricochet remains open, and to some degree resembles the unanticipated, concealed fireworks in *Palsgraf*, Plaintiff's spatial proximity to King within the room presents much less attenuated foreseeability of harm in relation to King's actions than the circumstances in *Palsgraf*.[4]  It is possible that a

_____

[3] Defendant Snow in its opposition raises the more general argument that King's negligence may have been the act of swinging golf clubs and hitting golf balls indoors while intoxicated, and under the circumstances there may be comparative fault that should be the jury's role to decide.
[4] "'[T]he orbit of the danger as disclosed to the eye of reasonable vigilance' marked the scope of liability." Dobbs, Hayden, and Bublick, The Law of Torts § 202 (2d) (quoting *Palsgraf*).  The question here is not necessarily whether King, if exercising reasonable vigilance, would have seen the metal pipe behind the tarp and refrained from using the simulator, it is whether he should have foreseen that in a golf simulator room, he owed a duty of care toward Plaintiff, because a ricochet within the room is generally foreseeable.

person hitting golf balls in a golf simulator room has a duty of care toward other persons within the room, regardless of whether an undetected hazard lurks behind the tarp at the front of the room.

Plaintiff urges the Court to conclude that negligence can be inferred by applying the doctrine of *res ipsa loquitur*, which "allows the plaintiff to escape a directed verdict without directly establishing negligence, and … allows the jury a permissive inference of negligence." *Lasek v. Vermont Vapor, Inc.*, 2014 VT 33, ¶ 16, 196 Vt. 243 (quoting *Cyr v. Green Mountain Power Corp.*, 145 Vt. 231, 235 (1984)):

> For the doctrine to apply, a plaintiff must demonstrate the following elements:
> 1. A legal duty owing from the defendant to exercise a certain degree of care in connection with a particular instrumentality to prevent the very occurrence that has happened.
> 2. The subject instrumentality at the time of the occurrence must have been under the defendant's control and management in such a way that there can be no serious question concerning the defendant's responsibility for the misadventure of the instrument.
> 3. The instrument for which the defendant was responsible must be the producing cause of the plaintiff's injury.
> 4. The event which brought on the plaintiff's harm is such that would not ordinarily occur except for the want of requisite care on the part of the defendant as the person responsible for the injuring agency.

*Id.*, ¶ 16 (quoting Cyr, 145 Vt. 235–36). In this case, there are questions of fact regarding the manner in which King engaged in the use of simulator room, selected and handled the three wood, and hit the ball. There are also questions of fact about the condition of the simulator room itself, and the role that it played in the ricochet that struck Plaintiff. In other words, it is a question of fact whether the event that occurred— the ricochet—is something that could ordinarily have happened even if the person hitting golf balls was not negligent, under other circumstances outside of the person's control. The Court cannot conclude at this juncture, based on the undisputed facts, that *res ipsa loquitur* applies here to establish negligence. Moreover, *res ipsa loquitur*, if it did apply, would allow an inference of negligence, but not causation. *Id.*, ¶ 17.

King argues that although courts in other jurisdictions have taken a variety of approaches to personal injury cases involving errant golf balls, standard negligence principles apply to the facts in this case. Strict liability principles do not apply to errant golf balls. "The mere fact that a ball does not travel the intended course does not establish negligence." *Cook v. Johnston*, 688 P.2d 215, 217 (Ariz. Ct. App. 1984) (quoting *Jenks v. McGranaghan,* 285 N.E.2d 876, 878 (NY 1972)). "The mere fact that a ball does not travel the intended course does not establish negligence." *Jenks*, 285

5

N.E.2d at 878; cf. *Rinaldo v. McGovern*, 587 N.E.2d 264, 267 (NY 1991). Even after preparing carefully for a shot, "even the best professional golfers cannot avoid an occasional 'hook' or 'slice.'" *Nussbaum v. Lacopo*, 265 N.E.2d 762, 767 (NY 1970). Generally, "the mere fact that a person is struck by a golf ball driven by a person playing the game of golf does not constitute proof of negligence on the part of the golfer who hit the ball, and that a golfer is only required to exercise reasonable care for the safety of persons reasonably within the range of danger of being struck by the ball." *Hennessey v. Pyne*, 694 A.2d 691, 698 (R.I. 1997) (quoting *Ludwikoski v. Kurotsu*, 875 F. Supp. 727, 731 (D. Kan. 1995)).

These statements concerning golfer negligence concern outdoor golfing and not indoor golf simulation rooms, in which a person hits a ball against a tarp/screen that hangs in front of a wall that is not at a great distance from the golfer and, by extension, from spectators behind the golfer. In ordinary golfing circumstances, reasonable care toward the people standing behind the golfer may have different parameters than reasonable care necessary when hitting balls within the close confines of a golf simulator room. The holdings of those cases, alone, do not eliminate the question of fact about whether using this particular simulator, in the condition in which it was found, in a manner that may have increased to probability of a topped shot that caused a ricochet, constituted a breach of the duty of care toward spectators at the back of the room.

It is undisputed that the ricochet of the ball caused Plaintiff's injury. There is some question of fact as to what caused the ricochet. Plaintiff has proffered evidence that shows that King's choices, due to intoxication or tiredness, may have increased the chances of topping the ball. But Plaintiff has not shown that topping the ball, in itself, foreseeably introduced the danger of ricocheting and hitting a bystander, since the normal operation of the golf simulator is to cause the ball to drop after it hits the tarp. Plaintiff has made no showing that King had a duty to inspect the golf simulator in a manner that would have revealed that topping the ball would be more likely to result in a dangerous ricochet toward the back of the room. However, indulging all reasonable inferences in favor of Plaintiff, it may have been negligent to use the simulator at all under the circumstances. King has not demonstrated that the undisputed facts eliminate the possibility that a finder of fact could decide that King was negligent and that his negligence played a role in causing Plaintiff's injury.

King argues that there is no evidence to support the contention that alcohol consumption was causally responsible for King's ball going in an unintended direction. Although Plaintiff's own expert stated that its not uncommon to drink alcohol while playing golf, and that some golfers perform better when drinking, King also admitted that his drinking contributed to his mis-striking the ball. It is therefore at least a question of fact whether there is a causal connection between the drinking (or tiredness, or both), using the golf simulator room to begin with, and topping the ball when he hit it, and the ricochet that injured Plaintiff. Whether topping the ball due to drunkenness is a breach of duty toward bystanders at the back of the room, when the ball still struck the tarp, is not resolved by King's admission, and King's facts do not rule out the possibility of that finding. It is possible that mis-striking the ball in itself is not

6

necessarily negligent, but increasing the possibility of mis-striking it, under the circumstances, could be negligent, indulging all inferences in favor of Plaintiff.

For the reasons discussed above, the undisputed facts do not establish that King is entitled to judgment as a matter of law, and his motion for summary judgment is denied.

<u>Order</u>

Defendant King's motion for summary judgment is denied.

Electronically signed: 2/9/2026 1:06:07 PM pursuant to V.R.E.F. 9(d)

John R. Treadwell
Superior Court Judge